.UNITED STATES *v.* SWIFT & COMPANY.

No. 56.   Argued January 9, 1931.—Decided February 2, 1931.

*Assistant Attorney General Rugg,* with whom *Solicitor General Thacher,* and *Messrs. Claude R. Branch,* Special Assistant to the Attorney General, *Charles R. Pollard, Bradley B. Gilman,* and *Clarence M. Charest,* General Counsel Bureau of Internal Revenue, and *Ralph E. Smith* were on the brief, for the United States.

*Mr. G. Carroll Todd,* with whom *Messrs. Francis E. Baldwin* and *T. Hardy Todd* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This was an action by respondent for the recovery of the amount of an admitted overpayment of income and war-profits taxes for the taxable year 1917, with interest.

In its return for 1917 respondent included the value of stock dividends received. February 28, 1923, it filed a claim for refund, alleging that the dividends in question should have been allocated to other years than 1917. The claim was rejected. Subsequently this court decided that stock dividends did not constitute income, as defined by the Sixteenth Amendment (*Eisner* v. *Macomber*, 252 U. S. 189). September 3, 1927, respondent filed a second claim for refund which it designated as an amended claim, and therein for the first time asserted that the dividends did not constitute taxable income. The Commissioner of Internal Revenue determined that the latter claim was barred by the statute of limitations and rejected it.

The respondent's position is that the second claim should be construed as an amendment of the first; but, if not, then, treating the second as an original claim, it was filed within the time required by law and should have been allowed. The Court of Claims overruled respondent's first contention, but held with it upon its second, and entered judgment in its favor. Upon the petition of the United States this court granted a writ of certiorari.

If the Court of Claims was right in its disposition of respondent's second contention we need not trouble ourselves with respect to the first. It is admitted that if the later claim for refund was filed in time the respondent should recover. The sums of which a refund is sought were not paid in cash, but consisted of a credit of an amount overpaid for other taxable years. Whether the claim was filed in due time depends, therefore, upon a determination of the date when the credit was allowed

within the meaning of the statutes. Section 252 of the Revenue Act of 1921 (42 Stat. 268) contains the following provision:

"That if, upon examination of any return of income made pursuant to . . . the Revenue Act of 1917, . . . it appears that an amount of income, war-profits or excess-profits tax has been paid in excess of that properly due, then, notwithstanding the provisions of section 3228 of the Revised Statutes, the amount of the excess shall be credited against any income, war-profits or excess-profits taxes, or installment thereof, then due from the taxpayer under any other return, and any balance of such excess shall be immediately refunded to the taxpayer: *Provided*, That no such credit or refund shall be allowed or made after five years from the date when the return was due, unless before the expiration of such five years a claim therefor is filed by the taxpayer: . . ."

The applicable portion of Section 284 (b) (1) of the Revenue Act of 1926 (44 Stat. 66) follows:

"No such credit or refund shall be allowed or made after . . . four years from the time the tax was paid in the case of a tax imposed by any prior Act, unless before the expiration of such period a claim therefor is filed by the taxpayer; . . ."

Under the quoted statutes the respondent was required to file its claim within four years from the date of the allowance of the credit. The petitioner asserts that the credit was allowed on February 9, 1923, when the Commissioner certified the overassessment to the Collector. The respondent insists that it was when the Commissioner signed the schedule of refunds and credits as reported by the Collector on September 6, 1923. The earlier date is more than four years from the filing of the claim, and the later one is within said period.

The issue thus raised will be resolved by determining what act constituted the allowance of the credit. Proper decision requires an understanding of the procedure followed in such cases.

. The record discloses that the practice of the Bureau was in the first instance to examine the taxpayer's return and if it disclosed an overassessment to prepare for the Commissioner a so-called certificate of overassessment, which when certified by the Deputy Commissioner went to the Commissioner. When the Commissioner had accumulated a number of such certificates with respect to taxpayers in a single collection district, a form called a schedule of overassessments was prepared, one line on such schedule dealing with each taxpayer's account for the taxable year in question. On this schedule was noted the overassessment of the taxpayer and blanks were left for further entries by the Collector of the district. To it was attached a subsidiary schedule, called a schedule of refunds and credits, on which the Collector should make report of his actions pursuant to the schedule of overassessments, and these two schedules, together with the individual certificates of overassessment, were forwarded to the Collector. On the schedule of overassessments were certain printed intructions as follows:

" The several amounts herein noted as reduction of tax liability are hereby approved and allowed.

" You will immediately check the items herein against the accounts of the several taxpayers and determine whether the several amounts in which the tax liability has been reduced should be abated in whole or in part and make such abatement as may be warranted by the condition of the taxpayer's account for the year involved.

" If any part of the tax is found to be an overpayment, you will examine all accounts of the taxpayer for sub-

sequent periods and apply such overpayment as a credit against the tax owing (if any) on the taxpayer's account for subsequent periods. (This applies to income, war-profits and excess-profits taxes only.)

" The balance (if any) of the overpayment shall be entered in column 12 and placed upon a schedule of refunds (Form 7777A) and an appropriate memorandum made upon the taxpayer's account.

" You will thereupon complete and certify this schedule and Schedule 7777A and return three copies of each to the Commissioner of Internal Revenue at Washington, making the appropriate entries in your accounts." *

The Commissioner, when he forwarded these papers to the Collector, had no way of knowing whether the overassessment would bring about an abatement of taxes theretofore assessed and unpaid, or would result in an overpayment by the taxpayer. This could only be ascertained by the Collector from the books and records kept by him. Moreover, after the Collector ascertained whether an overpayment resulted, he would have to determine from his books and records the further question whether such overpayment should be applied as a credit on taxes due or, in the absence of any taxes due, ought to be refunded.

When the Collector had completed his investigation and filled in the information as to abatement, overpayment, credit and refund on the schedule of assessments, and the subsidiary schedule of refunds and credits, he certified the correctness of these schedules and returned them, together with the certificates of overassessment, to the bureau in Washington. There the schedule and certificate were examined by the Deputy Commissioner, checked by him

---

* At the time here in question the schedule of refunds, Form 7777A, referred to in the last two paragraphs of these instructions, had been changed to a schedule of refunds and credits, Form 7805A.

to ascertain whether they were correct, and forwarded by him to the Commissioner of Internal Revenue for action. On the basis of his deputy's certificate the Commissioner would certify the schedule of refunds thus directing the disbursing clerk of the Treasury to draw checks for refunds shown on the schedule and checks for the inter', if any, on such refunds and on credits. Meantime the amounts shown on the schedule with respect to each taxpayer's account had been copied on the certificate of overassessment of that taxpayer, and when checks had been prepared for refunds and interest, if any, the certificate of overassessment, together with the checks, were sent to the Collector to be by him mailed to the taxpayer. The first official notification which the taxpayer received as to how his account had been handled with respect to abatement, credit, refund and interest was the certificate of overassessment which accompanied the check for the payment due him, if any. If there were no payment due him he received a certificate of overassessment with the amount of the credit which had been allowed him noted upon it. It is true that this certificate of overassessment stated that credit would be given, refund would be made, etc., whereas the credit had already been given and the refund check accompanied the certificate when it reached the taxpayer, but we do not think this affects the question of the date of allowance.

One of three dates may possibly be considered the date of the allowance of the credit,—that on which the Commissioner forwarded the schedule of overassessments to the Collector, that on which the Collector finished his calculations and entered the amount of the credit in the taxpayer's account, or that on which the Commissioner approved the schedule of credits and refunds. The petitioner insists upon the first and the respondent upon the last as the date of allowance of the credit; alternatively

the United States says that if the first be not the date of the allowance the intermediate one is.

In *Girard, Trust Company* v. *United States,* 270 U. S. 163, this court, after adverting to the above mentioned procedure, said [p. 170]:

"We can not concur, however, in the view of the Treasury Department that the date of the allowance of the claim as intended by the statute is the date when the Commissioner first decides that there has been an overassessment and sends upon a proper form his decision to the Collector of Internal Revenue, who made the collection and keeps the account with the taxpayer. . . ."

In the same case it was also said [p. 170]:

"The Commissioner of Internal Revenue is the final judge in the administrative branch of the Government to decide that an overassessment has been made and that a refund or credit should be granted, and when he has made that decision finally, he has allowed the claim for the refund or credit of the taxes paid within the meaning of the section."

It is conceded that the quoted language applies to the present case, but petitioner points out that it was used in a case in which only the date of allowance of a refund was involved. It is urged that as respects the allowance of a credit it was *dictum;* that conceding its correctness with respect to the date of allowance of a refund, different considerations apply with respect to a credit. The petitioner argues that as was stated in the *Girard Trust Company* case the last significant act done by the Commissioner is to authorize the refund, that being in fact made by the drawing of a check by a clerk and the mailing of a check by the Collector, whereas in the case of a credit the last act of authorization is the forwarding of the schedule of overassessments to the Collector, who then does the mere ministerial act of making the necessary calculations and ascertaining and entering the proper amount of the credit

on his books and on the schedule of refunds and credits which is to be returned to the Commissioner. It insists that when the schedule of refunds and credits is returned to the Commissioner he does authorize the drawing of checks for refunds, but does nothing whatever with respect to the credits shown on the schedule, merely filing it for reference. There is evidence, however, that the subordinates of the Commissioner check the calculations shown on the schedules when they are returned to the Bureau; that the Deputy Commissioner certifies the correctness of the schedule to the Commissioner; and that the official record of the credit is the schedule approved by the Commissioner and filed in his office. Moreover, the final act so far as the taxpayer is concerned is the receipt from the Collector of the certificate showing how the overassessment has been applied.

When he executes the schedule of overassessments the Commissioner has no knowledge as to what the Collector's account with the taxpayer shows. He does not know whether the overassessment will be entirely used up in abatements, or whether, if an overpayment is shown, it will have to be apportioned partly as a credit and partly as a refund. It is true that the Commissioner's directions to the Collector are that the latter shall examine the accounts and make the proper allocations, and it is true that the Collector's action in so doing is ministerial. But after that clerical work is performed the practice requires the return to the Commissioner of a statement or schedule of the allocations, the approval of that schedule by him, and the mailing of the certificate of overassessment, executed on his behalf, to the taxpayer. There is nothing in the record to indicate that the Commissioner might not order corrections to be made in the accounts of the taxpayer prior to the mailing of this certificate. The proofs do not disclose that he has not in practice done so. As the sole discretion and authority to allow a credit rests

with the Commissioner, we think that, in the light of the procedure above outlined, his approval of the schedule of credits and refunds must be taken to be the final exercise of that discretion and the allowance of the credit. This construction of the act brings about uniformity in administration, as it makes the allowance of credits and refunds simultaneous.

It results that even though the second claim for refund filed by the respondent be treated not as an amendment of its original claim of 1923, but as a new and independent claim, it was filed within four·years of the payment of the tax, since that payment must be taken to have occurred on the date of the allowance of the credit by the Commissioner's signature approving the schedule of refunds and credits. Such approval was given as respects the credit to respondent on September 6, 1923, which was within four years of the date of the filing of the second claim.

The views herein ·expressed make it unnecessary to decide whether the later claim may properly be considered an amendment of the original claim for refund.

The judgment of the Court of Claims is

*Affirmed.*