## YUBA CONSOLIDATED GOLD FIELDS v. UNITED STATES.

### No. 5019.

District Court, D. Massachusetts.
Feb. 19, 1934.

382

O. W. Taylor and Israel Gorovitz, both of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., by J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass.

BREWSTER, District Judge.

This is a suit to recover interest on an overpayment of income taxes for earlier years credited to the petitioner's income tax for the fiscal year 1922.

Judge Lowell heard the case upon an agreed statement of facts, and held that the petitioner was entitled to recover.[1] After the hearing, he allowed the petitioner to amend by the substitution of a new petition. Respondent moved for a new trial, which motion was allowed. Thereafter the petitioner waived its substituted petition and asked to amend certain allegations in the original petition. It was allowed to do so.

The case is now before me for a new trial. Respondent has moved to strike out from the agreed statement of facts a certain portion of paragraph 20, wherein it was agreed that the Commissioner, on February 6, 1926, approved the Schedule of Refunds and Credits, as prepared by the collector. This motion I allow.

Over the objection of the petitioner, I received evidence tending to show the mode of procedure in the Bureau of Internal Revenue which obtained in 1919 and up to the time when the enactment of the first statute, giving interest on refunds and credits, required the adoption of a new procedure. In the view I have taken of the questions hereafter considered, this evidence becomes immaterial.

The parties have filed requests for findings of fact and rulings of law. So far as these requests are granted, they will appear in the following statement of facts, to which I have added certain findings not requested but which, to me, seem to be material.

### Special Findings of Fact.

1. The petitioner is now, and at all times hereinafter mentioned was, a corporation organized and existing under the laws of the state of Maine, having a place of business in Boston, Mass., within the jurisdiction of this court.

2. On the below named dates and for the amount also shown for the years 1909, 1913, the two-month period ending February 28, 1914, and the fiscal year ending February 28, 1916, the petitioner filed returns and paid the taxes shown thereon as follows:

| Date of Filing | Year | Tax Amount | Paid |
|---|---|---|---|
| 2/24/10 | 1909 | $13,715.45 | |
| 3/25/14 | 1910 | 10,709.93 | |
| | 1910 (Add'l Tax) | 597.11 | |
| 6/1/15 | 2/28/14 | 258.83 | |
| 4/28/16 | 2/29/16 | 12,165.54 | |
| | 2/29/16 (Add'l Tax) | 2,027.59 | |

---

[1] No opinion filed.

3. On October 18, 1919, the Commissioner approved a schedule of allowance of claims for refund, known as Schedule IT: 108 (old procedure), showing the allowance of the following amounts as refunds:

| | |
|---|---|
| 1909 | $1,532.08 |
| 1913 | 285.80 |
| 2/28/14 | 299.08 |
| 2/29/16 | 2,824.15 |
| Total refundable | $4,941.11 |

The amount allowed for the fiscal year ended February 29, 1916, $3,109.64, was reduced by the amount credited to the additional tax for 1915, resulting in a refundable balance of $2,824.15, shown above.

4. On February 14, 1920, the petitioner filed a claim with the collector requesting that the above allowances be credited against a then outstanding tax due for the fiscal year ended February 28, 1919.

5. On March 7, 1920, the Treasurer of the United States issued "settlement warrant" No. 45317 for the amount of $4,941.11 in favor of the petitioner which was transmitted to the collector for delivery to the petitioner in full payment of the aforesaid overpayments allowed for the years 1909, 1910, two-month period ended February 28, 1914, and fiscal year ended February 29, 1916. Upon receipt thereof, the said warrant was returned by the petitioner to the Treasury Department, for the reason that it had taken credit for said amount, $4,941.11, against its taxes outstanding for the fiscal year ended February 28, 1919.

6. On May 6, 1920, the Auditor of the Treasury Department addressed a letter to the Commissioner advising him that the said warrant had been returned, inasmuch as the petitioner had already taken credit as set forth in the preceding finding.

7. On June 7, 1920, the collector addressed a letter to the petitioner in which it was advised that the full amount due for the said fiscal year 1919 had been fully paid, and that therefore it was entitled to have the settlement warrant of $4,941.11 returned.

8. On May 13, 1920, the petitioner paid an installment of taxes for the fiscal year ending February 28, 1920, and deducted the $4,941.11, inclosing by way of explanation a claim for a credit upon the 1920 tax of this amount.

9. On June 11, 1920, replying to the letter of June 7, 1920, the petitioner advised that it had erroneously paid the taxes for 1919 and advised that it now desired credit against the current year tax (1920).

10. On July 27, 1920, in accordance with the practice, the settlement warrant was canceled and the proceeds covered into the Treasury.

11. On October 26, 1922, after an audit of the petitioner's return for the fiscal year 1920, the Commissioner determined an overassessment of $16,604.89, and a certificate of overassessment on Schedule IT:2292 was issued disclosing $4,941.11, the unpaid balance as abated, and $11,663.78, the balance to be refundable.

12. On November 17, 1922, the collector advised the petitioner, based upon request for the status of its account for the fiscal year ended February 28, 1922, that, inasmuch as the amount of $4,941.11, previously requested as a credit against 1920 tax, had been abated, "the tentative credit" had "been transferred to your fiscal 1922 account."

13. On June 22, 1925, the collector of internal revenue wrote the Commissioner advising him that, according to the records of the collector, there was an outstanding tax liability against the petitioner for the fiscal year ending February 28, 1922, and adding that, since it did not appear that the corporation had ever been given credit for the allowance of $4,941.11, it was requested that the case be investigated and the collector advised relative thereto.

14. On December 10, 1925, the Commissioner of Internal Revenue signed and forwarded to the collector of internal revenue at Boston, Mass., a Schedule of Overassessment IT:A—17563, Treasury Department Form 7805, which stated: "The amounts listed in Column 4 as overassessments (or Reduction of tax liability) are hereby approved, and the related claims, if any, allowed in the respective amounts indicated by the 'Certificates of Overassessment' or 'Notices of Adjustment of Refund' attached thereto"; the taxable years and the amounts of the overassessments being as follows:

| "Overassessment or Reduction of Tax Liability." (Column 4) | "Taxable Year" (Column 6) |
|---|---|
| $1,532.08 | 1909 |
| 285.80 | 1913 |
| 299.08 | 2-28-14 |
| 2,824.15 | 2-29-16 |

15. On January 18, 1926, pursuant to the printed instructions on the said Schedule of Overassessment, the collector of internal revenue at Boston, Mass., made the following

entries in columns 9 and 11 of the said schedule:

| "Credit"<br>(Column 9) | "Due date of items against which<br>credit was made"<br>(Column 11) |
| --- | --- |
| $1,532.08 | 2–15–23 |
| 285.80 | 2–15–23 |
| 299.08 | 2–15–23 |
| 2,824.15 | 2–15–23 |

16. On January 18, 1926, pursuant to the instructions of the Commissioner, the collector of internal revenue at Boston, Mass., prepared the Schedule of Refunds and Credits IT—R—17565, Treasury Department Form 7805—A, which showed in columns 5 and 8 thereof (1) the amounts credited and (2) the dates that the said sums had been paid as follows:

| "Amount Credited"<br>(Column 5) | "Date of final payments of<br>account from which cred-<br>its were transferred and<br>overpayments found"<br>(Column 8) |
| --- | --- |
| $1,532.08 | 6–30–10 |
| 285.80 | 11–25–16 |
| 299.08 | 11–25–16 |
| 2,824.15 | 11–24–16 |

17. The Schedule of Refunds and Credits referred to in the next preceding paragraph was received in the Bureau of Internal Revenue, and on February 6, 1926, the assistant to the Commissioner approved the schedule, but neglected to sign the authorization to the disbursing clerk. Inasmuch, however, as the items in question were credits rather than refunds, I do not regard this omission as important, and I find as a fact that the Schedule of Refunds and Credits was approved by the collector of internal revenue on that date; and thereupon the collector of internal revenue forwarded to the petitioner four certificates of overassessment showing the overpayments and the allowances of the credits therefor on account of the petitioner's taxes for the fiscal year ending February 28, 1922. Each of the said certificates contained the following statement:

"This certificate is being issued expressly for the purpose of authorizing the Collector to credit the overassessment to the taxes now outstanding on his accounts.

"This allowance is made under the provisions of Section 281—C of the Revenue Act of 1924."

18. The issuance of the Schedule of Overassessments and the Schedule of Refunds and Credits by the Commissioner and collector was for the purpose of advising the collector to make the necessary adjustments to his accounts with reference to the 1922 unpaid taxes from petitioner.

19. The petitioner has duly requested the Commissioner of Internal Revenue to compute, allow, and pay interest on the said "credits" as shown on the aforesaid schedules, as provided in section 1019 of the Revenue Act of 1924 (26 USCA § 153 note), and the Commissioner of Internal Revenue has refused to allow or pay any interest thereon whatsoever.

20. The interest on the aforesaid sums (at the rate of 6 per cent. per annum) from the respective dates of payments as shown in column 8 of the Schedule of Refunds and Credits, Exhibit K, to the due date of the 1922 overassessment against which the credits were taken, as shown in column 11 of Exhibit J, amounts to $2,433.85 as alleged in paragraph 8 of the amended petition.

21. The petitioner has in all respects fully and sufficiently complied with the statutes and regulations in regard to all of the matters material to this suit; has not filed any waiver or made any transfer or assignment of said claim or of any part thereof or interest therein; has at all times borne true allegiance to the government of the United States; and has not in any way voluntarily aided, abetted, or given encouragement to rebellion against the said government in violation of section 159 of the Judicial Code, 28 USCA § 265.

Conclusions of Law.

Two questions are presented on the foregoing facts: First, Is the petitioner entitled to interest on the overpayments applied to the 1922 tax? and, second, if so, are petitioner's rights to recover barred by the statute of limitations (Rev. St. § 1069, now Jud. Code § 156, 28 USCA § 262)?

It appears that the government attempted to refund the overpayments in 1919, but it accepted a return of the amount refunded and consented to apply the amount as a credit against taxes for other years. For reasons not necessary to repeat, the attempted applications against the taxes for 1919 and 1920 failed until finally the taxpayer took the credit against the taxes falling due February 15, 1923. At this time Congress had enacted section 1324 (a) of the Revenue Act of 1921 (42 Stat. 316), authorizing the payment of interest on refunds and credits. If the due date of the tax upon which the credit was applied controlled the petitioner's right to interest, then this right would be governed by the Revenue Act of 1921, but it has been defi-

nitely decided that there is no "allowance" of a credit within the meaning of the statute authorizing interest until there had been official and final action by the Commissioner of Internal Revenue, and that such official act consists of the approval by the Commissioner of Internal Revenue of the certificate of refunds and credits. Girard Trust Company et al. v. United States, 270 U. S. 163, 46 S. Ct. 229, 70 L. Ed. 524; United States v. Boston Buick Co., 282 U. S. 476, 51 S. Ct. 206, 75 L. Ed. 470.

It is equally well settled that the law in force at the time of this official act determines the amount of interest to which the taxpayer is entitled. United States v. Magnolia Petroleum Co., 276 U. S. 160, 48 S. Ct. 236, 72 L. Ed. 509; Blair, Com'r, v. United States, 271 U. S. 348, 46 S. Ct. 506, 70 L. Ed. 983; United States v. Boston Buick Co., supra.

In the case at bar, it is apparent that on the books of the collector the taxpayer's liability for the balance of the 1922 tax was not extinguished until the certificate of refunds and credits, submitted by the collector, had been approved by the Commissioner. Conceding that the sole purpose of the proceedings in December, 1925, and January, 1926, was to enable the collector to record a proper entry on his books, it is nevertheless the law and the fact that the credit was not allowed until February 9, 1926. The petitioner is entitled to interest to be computed according to the provisions of section 1019 of the Revenue Act of 1924 (43 Stat. 253 [26 USCA § 153 note]).

This petition was brought December 9, 1931. Did its cause of action arise within six years prior to that date? From the standpoint of the taxpayer, it might be said that its claim for the overpayments was satisfied when it applied them toward the payment of its 1922 tax on February 15 of that year; but, if so treated, the application would not satisfy the government's obligation to pay interest which can be made the subject-matter of a suit. Girard Trust Co. et al. v. United States, supra.

If the cause of action arose then, this suit is too late, but I am convinced that it did not then arise. Apart from the statute, the petitioner is not entitled to interest. United States v. Magnolia Petroleum Co., supra. The statute providing for interest clearly authorized the payment of interest only upon the allowance of a refund or credit. Until such refund or credit is allowed, within the meaning of the statute, no cause of action accrues to the taxpayer. Leisenring et al. v. United States (Ct. Cl.) 3 F. Supp. 853. Compare United States v. Swift & Co., 282 U. S. 468, 51 S. Ct. 202, 75 L. Ed. 464; Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018.

It was said in United States v. Swift & Co., supra, at page 476 of 282 U. S., 51 S. Ct. 202, 205, that the payment of the tax upon which the credit was applied "must be taken to have occurred on the date of the allowance of the credit by the Commissioner's signature approving the schedule of refunds and credits." That this is so is further evidenced by the cases holding that the act in force at the time of the allowance is the law that fixes the government's liability for interest.

While the signature of the Commissioner of Internal Revenue does not appear on the certificate of refunds and credits, I have no hesitation in finding and ruling that the schedule was approved on behalf of the Commissioner sufficiently to effectuate an allowance of the credit. Compare R. H. Stearns Co. v. United States, 54 S. Ct. 325, 78 L. Ed. —— (decided January 8, 1934).

The claim of the government that it is entitled to interest on the delayed payment of the 1922 tax while it had in its possession the amount of it is entirely without merit, and hardly warrants consideration.

Judgment may be entered for the plaintiff for the sum of $2,433.85.

The requests of the petitioner and of the respondent for findings of fact and rulings of law, so far as inconsistent with the foregoing, are denied.

I continued the trial of this case until to-day in order to give counsel an opportunity, in the course of the trial, to preserve their rights in connection with my findings and rulings.