**RAHR MALTING COMPANY, a Wisconsin corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 56-C-85.

United States District Court
E. D. Wisconsin.

Dec. 16, 1957.

Frederic Sammond and Donald S. Buzard, Milwaukee, Wis., Fairchild, Foley & Sammond, Milwaukee, Wis., of counsel, for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland and Ernest C. Friesen, Jr., Attys., Dept. of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., and Francis L. McElligott, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, District Judge.

Action by plaintiff, a taxpayer, hereinafter called "Rahr", for a refund of excess-profits tax allegedly erroneously assessed and collected.

Basically this case presents two questions: First, was the excess-profits tax in question erroneously assessed and collected? And, second, if the first ques-

tion is answered in the affirmative, was the claim for refund filed within the time allowed by statute?

At all times material, Rahr was on the accrual basis. Its fiscal year for tax purposes was September 1 to August 31. The excess-profits tax return in question was filed for the fiscal year ending August 31, 1945, and showed a deduction for accrued capital stock tax. The amount of this deduction claimed on the trial was $36,000. Defendant denied this deduction, thereby increasing the excess-profits tax due for the fiscal year in question.

The capital stock tax was accrued on the books of Rahr July 1, 1945. That was the first day of the capital stock tax year of July 1, 1945–June 30, 1946. The capital stock tax was actually to be paid at the end of the capital stock tax year, in 1946.

Within a few days following the close of the fiscal year ending August 31, 1945, Rahr had an independent accounting firm commence the audit of its books. This audit was for the purpose of reports to stockholders, reports to banks where credit was obtained, and for the purpose of forming the basis of making tax returns. The audit report of the independent accountants was completed October 30, 1945. On November 8, 1945 the capital stock tax in question was repealed and consequently was never actually paid by Rahr. Rahr obtained extensions for time of filing income and excess-profits tax returns and the returns were finally filed January 15, 1946.

The evidence does not show the volume of business transacted by Rahr. Exhibit 14 does show that the declared value of the capital employed in the business was $32,000,000. One could readily conclude that the volume of business transacted was extremely large and that an item of $36,000 was a very small part in the transactions of Rahr in forming a basis for the determination of its accounting and its income for tax purposes.

On December 21, 1951, the government assessed a deficiency of $36,640.72, prin-

cipal, plus interest. This deficiency assessment arose out of the disallowance of the accrual of the capital stock tax. The interest in the sum of $13,410 was paid by Rahr in cash January 15, 1952. The principal was paid or satisfied by the application thereto of certain overpayments previously made by Rahr on other taxes. These overpayments appeared on the Schedule of Overassessments signed by the Deputy Commissioner on January 2, 1952. A copy of the statement of income tax due showing a liability of $50,050.72, principal and interest, and a credit of $36,640.72 from overpayments in previous years was mailed to Rahr January 3, 1952. The Schedule of Overassessments was received from the Commissioner by the Collector in Milwaukee on either January 5th or January 7th, 1952. This Schedule contained the following directions:

"The amounts listed in column 3 as overassessments or reductions of tax liability are hereby approved and allowed in the respective amounts indicated.

"The Collector will check such items against the accounts of the taxpayers and determine whether the amounts by which the tax liabilities have been reduced should be abated, credited against tax found to be due, or refunded, and will thereupon make appropriate entries in his accounts, complete and certify this schedule, and return same, with the necessary copies, to the Commissioner of Internal Revenue."

Pursuant to this direction the Collector completed the Schedule of Overassessments showing the overassessments credited to taxes due (i. e. the $36,640.-72 principal deficiency). The Collector signed and certified this Schedule of Overassessments on January 9, 1952.

January 6, 1954 Rahr filed a claim for a refund of taxes allegedly erroneously assessed and collected because of allegedly erroneous disallowance of deduction for capital stock tax. This claim was disallowed December 8, 1954.

The testimony shows, and the court finds, that at the time this capital stock tax was accrued, it was a proper accrual in conformity with good accounting practice, in conformity with the accounting practice used by Rahr over many years, and in conformity with the Internal Revenue laws in effect at that time. The court also finds that the proper amount of the accrual and deduction was $36,000.

The first question here presented resolves itself into this: Was Rahr required to reopen its books and remove the accrual of this item after it ascertained that the capital stock tax had been repealed in November 1945 after the close of its fiscal year?

On the question of requiring an accrual taxpayer to reopen its books after the close of the tax year to reflect subsequent events, authority goes no further than establishing that when a taxpayer has correctly accrued a tax and taken a deduction on one year's return, he need not thereafter recompute or adjust the accrual for tax purposes to reflect events occurring beyond a reasonable time after the close of the tax year. Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397; Van Norman Co. v. Welch, 1 Cir., 1944, 141 F.2d 99; United States v. Detroit Moulding Corporation, D.C.E.D. Mich.S.D. 1944, 56 F.Supp. 754; Cedar Rapids Engineering Co. v. United States, D.C.N.D.Iowa 1949, 86 F.Supp. 577. The ultimate limitation on this doctrine, which appears to stem from the Fawcus case, supra, is not now before the court, as will be seen from its determination in this case. The court wishes to make clear that it does not here align itself with the converse proposition that in all instances and under all fact situations an accrual taxpayer must take into account events occurring within a reasonable time after the close of its tax year. See Lewyt Corporation v. Commissioner, 1955, 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029.

It is conceded that a taxpayer would not be required to reopen its books after the time when the tax return is actually filed, on account of changes that occur after the close of the tax year. It is the position of Rahr that it would be unreasonable to require a recomputation of its tax and a reopening of its books after the report of the independent auditors, representing approximately six weeks' work had been completed; that this would have required a reworking of the statements going to stockholders and banks, as well as a recomputation of the tax.

Defendant relies strongly on the case of Fawcus Machine Co. v. United States, supra. In that case the court decided that an adjustment of a prior year's return would have to be made where a new retroactive tax was passed before the prior year's return was filed. However, there were certain special circumstances present in the Fawcus case. There the court determined as a matter of fact that the taxpayer could and should anticipate the change in rate which occurred as a continuous tax policy of the United States. Subsequent cases and authorities have interpreted the Fawcus case as turning heavily on the point that the tax changes therein involved were reasonably to be anticipated as a part of a continuous policy of change in rate. Van Norman Co. v. Welch, supra; Cedar Rapids Engineering Co. v. United States, supra; Mertens, The Law of Federal Income Taxation, 1953, Vol. 5, § 27.54.

The Supreme Court has recently reemphasized that the revenue laws embody the annual accounting principle; that each year is to be taken as a separate unit; that a taxpayer on an accrual basis is to report his income and take deductions according to the accepted principles of accrual accounting without taking into account, at least as a general rule, events that occur after the close of the taxable year. Lewyt Corporation v. Commissioner, supra. It is the opinion of this court that under all of the circumstances here present it would have been unreasonable to expect Rahr to have reopened its books, change the

audit and file an income tax return on a different basis than that which existed when the audit was completed.

Both parties agreed at the time of oral argument that this case must be determined under the 1939 Code.

Section 43 of the 1939 Code, 26 U.S. C.A. § 43, provides:

> "The deductions and credits * * * provided for in this chapter shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period * * *"

■ This section does not speak of the Commissioner's opinion. Its only qualification is that the deduction must clearly reflect income. The authorities go no further than establishing that taxpayer need not keep his tax return open for adjustments beyond a reasonable time after the close of his tax year. Defendant's contention that the opinion of the Commissioner must govern is poorly taken.

■ Coming to the second question, whether Rahr's claim for refund was filed within the time allowed by statute, the following sections of the 1939 Code, 26 U.S.C.A., are applicable:

Section 322(b)(1) provides:

> "(1) Period of limitation. Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. * * *"

Section 322(a)(1) provides:

> "(1) Overpayment. Where there has been an overpayment of any tax imposed by this chapter, the amount of such overpayment *shall* be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance shall be refunded immediately to the taxpayer." (Emphasis supplied.)

Section 3770(a)(3) provides:

> "(3) Date of allowance. Where the Commissioner has signed a schedule of overassessments in respect of any internal revenue tax imposed by this title, the Revenue Act of 1932, or any prior revenue Act, the date on which he first signed such schedule (if after May 28, 1928) shall be considered as the date of allowance of refund or credit in respect of such tax."

This question comes down to a determination as to whether the claim filed January 6, 1954 was "within two years from the time the tax was paid", because it is conceded by Rahr that it was filed more than three years from the time the return was filed. As previously mentioned, $36,640.72 of this tax was paid by application of credits rather than by cash. Five dates have been suggested as the exact time of payment. The government claims that January 2, 1952, the date when the Deputy Commissioner in Washington signed the Schedule of Overassessments, is the crucial date. Rahr suggests one of the following four dates, all of which occurred after January 7, 1952:

1. The date of the Claims Clerk's action in making entries on the assessment list showing how the deficiencies were being satisfied.

2. The date of the Claims Clerk's action in indicating on the Schedule of Overassessments the disposition of the overassessments.

3. The date of completion of the Collector's copy of the Schedule of Overassessments.

4. The date of certification of the Schedule of Overassessments by the Collector on January 9, 1952.

It is conceded by the government that the claim for credit was filed within

two years from the time the interest payment of $13,410 was made, so that the determination of the question of the two-year period relates only to the $36,-640.72 which was paid by credit.

The statute nowhere expressly defines the date of payment with reference to payment by means of allowance of credits. However, section 3770(a)(3) defines the date of allowance of credit or refund, and section 322(a)(1) of the 1939 Code is mandatory that where there has been an overpayment, the amount thereof *shall* be credited against any taxes due and any balance shall be refunded immediately to the taxpayer. This would seem logically to mean that taxpayer, as a matter of right, is entitled to that credit as of the date of allowance, namely, when the Commissioner has signed the Schedule of Overassessments.

The Supreme Court has decided in United States v. Swift & Co., 1930, 282 U.S. 468, 51 S.Ct. 202, 75 L.Ed. 464, that payment is effected by credit when the credit is allowed. After stating this general principle, the court determined under the then existing statutes and internal revenue procedure that a credit was allowed when the Commissioner signed the schedule of refunds and credits. Subsequently, Congress by statute specifically provided that a credit shall be allowed when the Commissioner signs the Schedule of Overassessments—section 3770(a)(3), 1939 Code. Applying the principles of the Swift case to the 1939 Code indicates that the date of allowance, the date the Commissioner signs the Schedule of Overassessments, must be taken as the date of payment by credit. It is significant that in section 3770(a)(3) Congress specifically equated the allowance of credit with the initial signing of a Schedule of Overassessments by the Commissioner, which, of itself, pertains to debits rather than credits.

Rahr relies heavily on the Swift case, ignoring the statutory changes. There is no discretion but to give the credit under the provisions of section 322(a)(1), 1939 Code. Consolidated Paper Co. v. United States, 1932, 59 F.2d 281, 75 Ct.Cl. 215; certiorari denied 288 U.S. 615, 53 S.Ct. 506, 77 L.Ed. 988, which was decided under a statute similar to section 3770(a)(3), determined that a tax is paid by application thereto of credit at the time when the credit is allowed, that is, the time when the Commissioner signs the Schedule of Overassessments. The reasoning in that case when applied to the 1939 Code appeals to this court as sound.

Rahr also relies on United States v. Wurts, 1938, 303 U.S. 414, 58 S.Ct. 637, 638, 82 L.Ed. 932, which involved the question of the statute of limitations in a government suit to recover a refund erroneously made. There the court determined that the government's right to collect the erroneous refund had not accrued until the government actually paid the refund. Until it paid the refund, it would have no claim against the taxpayer. There is quite a different situation here. The question here is when payment was made by *credit* to the taxpayer. The court in Wurts was construing a limitation against the government. It points out that ordinarily the government's right is not barred by the passage of time and that the government is not barred "unless Congress has 'clearly manifested its intention' to raise a statutory barrier."

The first three dates suggested by Rahr pertain to mere ministerial action on the part of the personnel in the Collector's office. One would be reluctant to assume that Congress intended that ministerial or clerical action would be determinative. The last date, January, 9, 1952, on which the Collector certified the allowance of credits on the Schedule of Overassessments would be persuasive if the Commissioner had not *previously* signed, on January 2, 1952, the Schedule of Overassessments, and were it not for the statutory provisions, particularly sec-

tion 3770(a)(3), making the Director's action on January 9, 1952, as a practical matter, merely ministerial. He was following out the directions of the Commissioner contained in the Schedule of Overassessments, which directions the statute required him to follow.

Under this construction of section 3770(a)(3), the date of allowance of credit applies in determining whether a claim for refund has been timely filed (section 322(b)(1), when payment is effected by credit); as well as for purposes of limitations in a taxpayer's action to recover interest on overpayments (see Mertens, The Law of Federal Income Taxation, 1948 ed., Vol. 10, § 58.96, 1956 cumulative supplement, § 58.96; Rev.Rul. 56–506, I.R.B. No. 1956–41 at pp. 84–85, 1956–2 C.B. 959; Rev. Rul. 57–242, I.R.B. No. 1957–22 at p. 30); and for purposes of bringing a suit for refund against a collector (section 3772(e), 1939 Code, 26 U.S.C.A. § 3772 (e)). One may assume that Congress intended such harmony and regularity.

The parties have filed a stipulation of facts. The court hereby adopts the stipulation of facts as its findings of fact in this case, adding thereto the findings set forth above. They are, as to the propriety of the accrual in the first instance, as to its proper amount, as to the time of the audit, and as to the question of unreasonableness of requiring Rahr to reopen its books after the repeal of the capital stock tax. The court's conclusions of law are as set forth above. The payment of interest, being within two years of the filing of the claim for refund, may be recovered. The payment of principal, made by credit, is held to be more than two years prior to the claim for a refund and therefore not recoverable under the statute.

Counsel for Rahr is directed to prepare an order for judgment and judgment in accordance with this opinion and with paragraph twelve of the stipulation of facts, submitting them to the defendant for approval as to form and the arithmetical computation of the interest only.