**RAHR MALTING COMPANY, A Wisconsin Corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 12328.

United States Court of Appeals
Seventh Circuit.

Oct. 24, 1958.

Frederic Sammond, Donald S. Buzard, Milwaukee, Wis., Fairchild, Foley & Sammond, Milwaukee, Wis., of counsel, for appellant.

Charles K. Rice, Asst. Atty. Gen., Grant W. Wiprud, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Joseph F. Goetten, I. Henry Kutz, S. Dee Hanson, Attys., Dept. of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., Francis L. McElligott, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before MAJOR, FINNEGAN and HASTINGS, Circuit Judges.

HASTINGS, Circuit Judge.

Appellant (taxpayer) seeks reversal of a determination by the district court that its claim for a refund of excess profit taxes, which had been erroneously assessed and collected,[1] was not filed within the statutory period of limitations. The applicable provision of the Internal Revenue Code of 1939 required that a claim for refund be filed "within two years

---

1. There is no appeal by the government from the district court's holding that the taxes involved here were erroneously assessed and collected.

from the time the tax was paid." [2] Taxpayer's claim was filed January 6, 1954. On January 15, 1952, the sum of $13,410, representing interest on the tax erroneously assessed, was paid in cash, and as to this cash payment of interest, there is no question but that the claim was timely. However, payment of the principal amount of the tax ($36,640.72) was made through the application of credits for overassessments, as provided in 26 U.S.C.A. § 322(a) (1) (1939 I.R.C.), rather than in cash; and government and taxpayer disagree as to when such "payment" was effected.

A brief review of the Internal Revenue procedures followed in this case will aid in the understanding of the issue presented. A deficiency was assessed against the taxpayer on December 21, 1951 representing a tax liability for the fiscal year ending August 31, 1945; and, on December 28, 1951, the Collector in Milwaukee, Wisconsin, received from the Commissioner the Assessment List so indicating. This Assessment List directed that demand be made for the deficiency and also showed that overassessments had been made against taxpayers in the years 1945, 1947 and 1948. Accompanying the Assessment List was a "Statement of Income Tax Due" indicating the deficiency plus interest due from the taxpayer.

Pursuant to discretion granted him by Section 2627 of the Collectors Manual,[3] the Collector caused an Analyzation Sheet to be prepared in which the overassessments indicated on the Assessment List were applied to the deficiency in order of taxable years. Then there was typed on the face of the "Statement of Income Tax Due" the following: "Credit $36,640.72 [balance due] $13,410." Taxpayer was mailed its copy of this Statement on January 3, 1952, along with a mimeographed form which stated:

"The enclosed statement of tax due reflects a credit with respect to a proposed overassessment. Should you elect to deduct this proposed credit at this time and remit the balance, please be advised that in the event that the credit should be allowed in an amount other than indicated on the statement or applied in a manner other than indicated, interest will continue to accrue from the date of this notice on any balance due on this account until paid."

Taxpayer responded to this Statement by paying the balance due (the interest) as set out above in this opinion.

On January 5 or 7, 1952,[4] the Collector received from the Commissioner a Form 7920, designated as the "Schedule of Overassessments," which was signed by the Deputy Commissioner on January 2, 1952. This indicated the amounts allowed as overassessments by the Commissioner and contained the following printed instructions for the Collector:

"The amounts listed in column 3 as overassessments or reductions of tax liability are hereby approved and allowed in the respective amounts indicated.

"The Collector will check such items against the accounts of the taxpayers and determine whether the amounts by which the tax liabilities have been reduced should be abated, credited against tax found to be due, or refunded, and will thereupon make appropriate entries in his accounts, complete and certify this schedule, and return same, with the necessary copies to the Commissioner of Internal Revenue."

2. 26 U.S.C.A. § 322(b) (1).

3. This section provides, in part: "Since there are numerous instances in which nominal amounts are involved or small differences exist between the amount of the deficiency assessment and the overassessment indicated on the list, collectors may exercise discretion in such cases as to whether demand should be made for the small outstanding difference or the entire amount of the assessment."

4. The Collector's copy of this form was stamped received on January 7, 1952 and the date was altered in ink to read January 5, 1952.

Following these directions the Collector's office made the entries on the Schedule of Overassessments indicating, in this case, the "Amount Credited to other Taxes or Interest Due," which credit included the amount of $36,640.72 involved in this controversy. The original and Collector's account copy of this Schedule thus completed were certified by the Collector on January 9, 1952 and thereupon returned to the Commissioner along with the Certificates of Overassessments which indicated the specific disposition of the various credits. Thereafter, the Commissioner forwarded to the taxpayer its copies of the Certificates of Overassessments.

It is the Government's position that the taxes were "paid" in this case on January 2, 1952, the date on which the Deputy Commissioner signed the Schedule of Overassessments thus allowing, in effect, a reduction of any outstanding tax liability of the taxpayer, and that the two-year period of limitation began to run on that date. Taxpayer contends that both Government and trial court have lost sight of a basic distinction between *allowance* of an overassessment or credit and the final *application* of an allowed credit in satisfaction of a tax liability. The application of the credits or payment of the tax took place, according to taxpayer, some time after January 7, 1952 when the Claims Clerk in the Collector's Office in Milwaukee, Wisconsin, made the various entries indicating the disposition of the overassessments, or on January 9, 1952, when the Collector certified the Schedule of Overassessments, the filing of the claim for refund on January 6, 1954 thus being timely.

The Supreme Court of the United States recognized no such distinction between allowance and application of credits in United States v. Swift & Co., 1930, 282 U.S. 468, 51 S.Ct. 202, 75 L.Ed. 464,[5] in which the Court stated that, as a general principle, payment is made by credit on the date that the credit is *allowed* by the Commissioner. It was determined in Swift that credit was allowed under the then existing Bureau procedures when the Commissioner in the exercise of his discretion approved the schedule of refunds and credits.[6] The Court, in so holding, rejected the Government's contention that the signing of the Schedule of Overassessments was the last effective act of the Commissioner in the exercise of his discretion to allow a refund or credit.

■ The Swift case, though decided under provisions of the Revenue Act of 1921, is still authority for the general proposition that a tax is considered paid by credit on the date of the allowance of such credit. A review of subsequent legislation indicates when such credit is allowed. The Revenue Act of 1926, c. 27, 44 Stat. 119, provided under a section on interest on refunds and credits (§ 1116 of the Act), that:

> "(b) The term 'date of the allowance of the refund' means, in the case of any income, war-profits, or excess-profits tax, the first date on which the Commissioner signs the schedule of overassessments in respect thereof."

Under this provision the Court of Claims in Consolidated Paper Co. v. United States, 1932, 59 F.2d 281, 75 Ct. Cl. 215, certiorari denied 288 U.S. 615, 53 S.Ct. 506, 77 L.Ed. 988, determined that a tax was considered collected on the date the Commissioner first signed the Schedule of Overassessments (thus allowing the credit) and that there was there-

---

5. Taxpayer seeks some basis for this purported distinction in Girard Trust Co. v. United States, 1926, 270 U.S. 163, 46 S. Ct. 229, 70 L.Ed. 524. The Girard case did not, however, involve a question of allowance of credits but merely went to the question of whether interest on refunds should run to the date the refund was administratively allowed or to the date actual payment was made. The Supreme Court held that the former was the case.

6. The Schedule of refunds and credits was dispensed with sometime later by the Bureau. Certification by the Collector is now made on the Schedule of Overassessments.

fore no merit in the contention that collection was made upon a subsequent approval by the Commissioner of a schedule of refunds and credits on a date beyond the period of limitations for collection of the tax involved. The Court of Claims cited the Swift case and its opinion is entirely consistent with the rationale of that case.[7] It also distinguished its prior holding in Atlas Powder Co. v. United States, 1930, 40 F.2d 136, 69 Ct.Cl. 558, as having involved a credit allowed and taken prior to the 1926 enactment.

In the Revenue Act of 1932, c. 209, 47 Stat. 287 Congress provided that:

"Where the Commissioner has (before or after the enactment of this Act) signed a schedule of over-assessments in respect of any internal revenue tax imposed by this Act or any prior revenue Act, the date on which he first signed such schedule (if after May 28, 1928) shall be considered as the date of allowance of refund or credit in respect of such tax."

■ The above language of the Revenue Act of 1932 is substantially that of Section 3770(a) (3) of Title 26 U.S.C.A. (I.R.C. 1939), and in light of this controlling provision of the 1939 Code and in line with the reasoning of both the Supreme Court in the Swift case and the Court of Claims in Consolidated Paper we hold that payment in this case was effected by credits for overassessments on the date the Commissioner first signed the Schedule of Overassessment, January 2, 1952, and that, upon such payment, taxpayer's right to claim a refund accrued.

The case of United States v. Wurts, 1938, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932, relied upon by taxpayer is inapposite for the reasons set forth in the opinion of the district court. 157 F.Supp. 803, 807. Similarly, we find little support for taxpayer in Rosenman v. United States,

1945, 323 U.S. 658, 65 S.Ct. 536, 537, 89 L.Ed. 535, cited by it in oral argument before this court. That case involved a claim for refund of federal estate tax where the taxpayer had paid a deposit "under protest and duress, and solely for the purpose of avoiding penalties and interest," such deposit having been placed in a suspense account by the Collector to the credit of the estate. The question there was whether the period of limitations for a claim for refund commenced to run from the time of the payment of the deposit. The Court held that it did not since it had been "paid" prior to any challenged action by the Collector and because only such challenged action, that is, an erroneous or illegal assessment and collection could give rise to a claim for refund. That is not this case.

It is unfortunate that, in this instance, taxpayer will lose a substantial sum that it would otherwise be entitled to receive. The loss to taxpayer of the refund is one inherent in the application of any period of limitations. "Such periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary." Kavanagh v. Noble, 1947, 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150. The taxpayer here had substantially the full two-year statutory period in which to assert its accrued right, having been in receipt of the Statement of Income Tax Due (mailed on January 3, 1952) which showed the proposed allowance of credits for overassessment against an outstanding tax liability and the balance due; and, yet, it delayed filing its claim, for reasons unknown to us and not material to our determination of this case, beyond the permitted time.

Following our determination, therefore, that taxpayer's claim for refund was not filed within the statutory two-year period, the judgment of the district court is

Affirmed.

---

7. The Court of Claims rejected taxpayer's argument that the provision of the 1926 Act was specifically limited to the purpose of determining the last interest date in the case of a refund, and ruled, in effect, that the section changed the substantive law as to when a refund or credit is allowed.