JULIA A. FORHAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85367. Promulgated November 25, 1941.

*Edgar B. Bronson, Esq.*, for the petitioner.
*James C. Maddox, Esq.*, for the respondent.

#### OPINION.

MURDOCK: The Commissioner determined a deficiency of $43,974.41 in the petitioner's income tax for the calendar year 1932. He has now stipulated that she owed no tax for that year, but has made an overpayment of $441.74, the amount shown on her return filed with the collector of internal revenue for the third district of New York.

The only question presented for decision by the Board is whether the Board can make a finding that the overpaid tax was paid within two years before the filing of a claim for refund. The evidentiary facts have been stipulated.

The Commissioner is not permitted to make a refund of overpaid tax after two years from the time the tax was paid, except under certain circumstances. The taxpayer has filed a timely petition with the Board after receiving a notice of deficiency. A refund can not be made under such circumstances unless the Board determines as a part of its decision that the tax was paid within two years before the filing of a claim for refund or the filing of the petition, whichever was earlier. Sec. 322, Revenue Act of 1932. The overpaid tax in the amount of $441.74 was paid quarterly in 1933, the last payment having been made on December 16. The petition was filed more than two years after the last payment. The petitioner argues that a protest which she filed on December 1, 1934, together with a memorandum in support of that protest filed by her attorney on January 5, 1935, were sufficient to constitute a claim for refund. Those papers were filed within two years after the payment of the tax, so that the only question is whether they constitute a claim for refund within the meaning of section 322.

The petitioner and her husband separated under an agreement dated April 5, 1932. He revived an old trust of December 15, 1922, by placing new property in that trust. He was trustee and his wife was beneficiary. He guaranteed that she would receive at least $15,000 a year from the trust. He also provided her with a place to live by causing his wholly owned corporation, Forhan Realty Corporation, to give her a lease for life on a house at a nominal rental, and he further agreed that if she was prevented from occupying the house, he would pay her $500 a month so that she could secure other quarters. The above matters were all incorporated in the agreement of April 5, 1932.

The total gross income which the petitioner reported on her return for 1932 and upon which the tax shown on that return was computed and paid was $17,666.29, received from the trust above mentioned. The Commissioner sent the petitioner a letter dated November 17, 1934, stating that a review of her return for 1932 disclosed a deficiency of $11,364.93. He explained in the letter that he had eliminated the items of gross income which she had reported and had taxed them to her husband, but had included in her income $60,000 representing the value of her life interest in the lease, which she had received under the agreement of April 5, 1932. The petitioner was told in the letter that she could file a protest in writing against the income tax liability proposed, provided she did so within

fifteen days, and she was also advised what information the protest should contain.

The petitioner filed a protest on December 1, 1934. She had signed the document and sworn to it. It was submitted pursuant to the letter of November 17, 1934. The grounds for the protest were: (1) That the lease "was in the nature, and in lieu of alimony and support"; (2) in any event, the entire value of the lease was not income in 1932, but no more than the value of the use of the premises for that year would be income for that year; and (3) the value in 1932 of the yearly use of the premises and the lump sum value of the lease for the life of the petitioner were only nominal or, at least, very much less than the value assigned in the letter of November 17, 1934. She stated in the protest that it was her intention and the intention of her husband that she should receive for her maintenance and support in lieu of alimony the income from the trust "and the lease, which is the subject of this protest." No reference whatsoever to the taxes already paid was made in the protest. The petitioner asked for a hearing on the protest.

A hearing on the protest was held on January 5, 1935, at which the duly appointed attorney for the petitioner appeared and submitted to the conferee an eight-page memorandum in support of the protest. He also filed with the conferee, at the latter's request, copies of the trust and agreements. He argued in the memorandum that "Neither alimony, nor a provision or allowance for the support and maintenance of the wife, pursuant to a separation agreement, is taxable income to her." He cited authorities in support of that proposition and concluded that the lease "which is the subject of this protest" was a part of the plan to provide for her support and "like other allowances or provisions for support, based on the separation agreement, it is not taxable to her." He also argued that the Commissioner had overvalued the lease and, in any event, a yearly value rather than a lump sum value would be the most that could be included in income for 1932. The conclusion of the memorandum was that the protest should be sustained, the value of the lease should be excluded from the taxpayer's income, and, even if something should be included, it should be no more than the real annual value of the use of the house for the tax year. No mention of the taxes shown on the return and theretofore paid was made in that memorandum.

The attorney appeared before another conferee on April 9, 1935, and argued that the value of the lease, the income from the trust, and money received by the petitioner upon the execution of the separation agreement were not taxable income to her for 1932. Thereafter, the Commissioner advised the petitioner in letters that

the matter of her income tax liability for 1932 was being considered. However, he never allowed the protest and mailed the petitioner the notice of deficiency on March 16, 1936. The deficiency of $43,974.41 was determined by adding to the net income of $17,056.78 reported by the petitioner on her return, $60,000 representing the value of her life interest in the lease, and $50,000 described as received in part settlement of a law suit.

Counsel for the respondent explained, when this case was called for hearing, that the Government had taxed the income in question both to the petitioner and to her husband to assure collection of the tax, no matter which one owed it. He said the Government did not seek to collect the tax from both parties, and, since it had won the case against the husband by default, an appropriate adjustment would be made in the case of the petitioner. The stipulation followed and the Commissioner now concedes that the petitioner owed no tax for 1932 and has made an overpayment in the amount of $441.74 shown on her return.

The petitioner reasons as follows: The Commissioner's letter of November 17, 1934, in effect, acknowledged that the tax paid on the return was an overpayment unless the new item of $60,000, representing the lease, was properly taxable; the protest and memorandum filed by the petitioner claiming and showing that the new item of $60,000 was not taxable to her conveyed notice of the overpayment and that refund was due to the petitioner; consequently, those documents constituted a sufficient refund claim. Courts have been rather liberal in deciding just what constitutes a proper claim for refund. For discussion of this subject see Law of Federal Income Taxation, Paul and Mertens, sec. 51.16, et seq. The taxpayer, however, must have filed some kind of a document within the statutory period. He must have indicated thereon, with reasonable clarity, the fact that he was demanding a return of overpaid taxes and the ground upon which he was making his demand. Furthermore, the ground which he advanced must be one which actually supports the overpayment. In other words, the Commissioner must be put upon notice. Perfect claims filed after the period of limitations had run have been recognized as amending informal or imperfect claims filed before the statute had run. A protest against an additional assessment ordinarily may not be recognized as a claim for refund.

The present protest and memorandum were not intended as a claim for refund and were not treated as a claim for refund. They were intended and treated merely as a protest against the assertion of any additional tax. Even if they could be regarded as an imperfect claim for refund, susceptible of amendment, nevertheless, no

amendment was ever filed and the issuance of the notice of deficiency was a complete rejection of any pending claim. Thereafter, it was too late to amend. Furthermore, the petition to the Board may not be regarded as an amendment of an imperfect claim theretofore filed.

The parties have not cited any case which contains facts at all comparable to those in the present case. The petitioner never protested against the taxes shown on her return and never filed any claim for the return of those taxes. She never advised the Commissioner in writing that she had overpaid her taxes for 1932 or that she demanded the return of any taxes paid for that year. One may reason, of course, that, since she protested against the inclusion of the $60,000 proposed in the letter of November 17, 1934, and the Commissioner had eliminated the income which she had reported on her return, she was, in effect claiming that she owed no taxes for 1932 and, therefore, she must have been claiming that she had overpaid the taxes shown on her return. But the notice to the Commissioner would have to be more direct than that to constitute a proper claim for refund. She made only collateral reference in her protest to the income from the trust which she had reported and on which she had paid the tax. The protest was in the alternative and not only contains no reference to taxes paid, but also fails to state any demand for refund of taxes already paid. We are unable to determine, as a part of our decision, that the tax was paid within two years before the filing of a claim for refund.