**Chester W. CAMPBELL,
Plaintiff-Appellant,**

v.

**UNITED STATES of America et al.,
Defendants-Appellees.**

**No. 77–1011.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 17, 1978.

Decided Feb. 5, 1979.

Frederick A. Patmon, Patmon, Young & Kirk, James B. Feaster, Detroit, Mich., for plaintiff-appellant.

James K. Robinson, U. S. Atty., L. Michael Wicks, Asst. U. S. Atty., Detroit, Mich., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Myron C. Baum, Crombie J. D. Garrett, Richard Farber, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendants-appellees.

Before LIVELY, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.

PECK, Senior Circuit Judge.

On February 27, 1975, $280,000 in cash belonging to the plaintiff Chester Campbell was seized from his home by Detroit police officers during a search for firearms. The same day, after being notified of the seizure, the Internal Revenue Service terminated plaintiff's taxable year, issued a termination assessment in the amount of $137,923, and notified the Detroit police of a lien on the funds in that amount. A week later, a state court ruled that the money had been seized illegally and ordered the return of the funds, but $137,923 had already been turned over to the IRS in satisfaction of its lien. Campbell has been trying to get his money back ever since, and the IRS has yet to be called upon to demonstrate the reasonableness either of its determination that collection of Campbell's taxes was in jeopardy or of the amount assessed.

Campbell promptly filed a suit seeking a declaratory judgment ruling that the assessment was void, an injunction against the collection of taxes alleged to be due under the assessment, the removal of the assessment from the tax records, the lifting of any attendant liens, and finally, the return of the money. He argued that the assessment was void because the IRS failed to follow the required procedures in making the termination assessment, because it had not issued a notice of deficiency within 60 days after the assessment was made; that the termination and assessment were entirely excessive and without factual support, intended only for harassment; that the cash seized from his home was seized during an illegal search and could not serve as the basis of an action to collect taxes; and that the termination assessment and seizure procedures used in this case constituted a violation of due process.

Campbell has been successful in all his requests for relief except the return of the money. The district court ruled that the IRS had failed to comply with the mandatory statutory procedure of issuing, within 60 days of seizure, a notice of deficiency, and granted him the relief sought, staying the return of the money pending appeal. While the case was pending in this Court, the Supreme Court settled the issue in *Laing v. United States*, 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976), holding that a jeopardy assessment proceeding was invalid unless the 60-day notice of deficiency was issued.

At this point, dates become important. *Laing* was decided on January 13, 1976. Apparently recognizing that it was going to lose, the IRS began an entirely new proceeding against Campbell on March 9, 1976, by sending him a notice of deficiency for the taxable year 1974, charging that he owed $233,494.42 in taxes and penalties. The assumption underlying this figure was that the entire amount seized by the police in February, 1975 was taxable income earned during 1974 and the first month of 1975. On March 12, 1976, the Government filed a motion with this Court for a remand to the district court for further consideration in light of *Laing* and the new proceeding against Campbell.

Now armed with his deficiency notice (often called the "ticket to the Tax Court" *see, e. g., Commissioner of Internal Revenue v. Shapiro*, 424 U.S. 614, 630 n. 12, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976)), Campbell duly filed suit in the Tax Court for a redetermination of his tax liability. All the issues raised by him challenging the amount of the alleged deficiency and the legality of the seizure of his money are properly before the Tax Court now, awaiting decision.

All would be well, except that the IRS refused to return Campbell's money to him upon his attorney's request, when this Court's opinion was handed down on March 16, 1976, affirming the district court's order that the money be returned forthwith, on the authority of *Laing*. Normally, of course, tax liability is fully litigated in the Tax Court before any seizure can be made, and a person is not deprived of property until there is a judicial determination that there are in fact taxes owed to the Government, unless a taxpayer elects to make payment and sue in District Court for a refund. In this case, however, the IRS entered a new jeopardy assessment against Campbell on April 27, and applied to the district court on May 10, 1976, for a modification of its first order in light of the new asserted deficiency and jeopardy assessment, to allow it to continue to hold the funds until the Tax Court renders its decision.

The district court granted the defendant's request, and amended its order to allow the United States to continue to hold the money pending the adjudication of all the issues in the Tax Court. It did not deal with the merits of the plaintiff's challenges to the new assessment, concluding that all those challenges could be properly resolved in the course of the Tax Court proceeding. However, the district court gave no reasons at all for its conclusion that the United States should be allowed to hold the money, other than a reference to "changed factual circumstances." The district judge did cite his own opinion in a similar case, *Harris v. United States*, 412 F.Supp. 24 (E.D.Mich. 1976) in which the court had concluded that "to grant injunctive relief for the return of money collected under an invalid assessment where taxpayer is liable for taxes later validly assessed would be improvident." *Id.* at 25.

The only issue before us now is whether the district court properly amended its prior order, as affirmed by this Court, to allow the IRS to retain the monies held by it for eventual set-off against plaintiff's tax liability, if any there be, when that liability is finally determined by the Tax Court. Plaintiff's principal argument is that the district court was without jurisdiction to alter its judgment once it had been affirmed on appeal. Under the facts of this case, we agree with the plaintiff, and order his funds promptly released to him in accordance with the original decision affirmed by us. This result, of course, has no effect whatsoever on the merits of the case before the Tax Court now adjudicating plaintiff's tax liability.

The Government argues that this case presents an example of "changed factual circumstances" justifying relief from the effect of the judgment. However, the Government glosses over the fact that the changed factual circumstances to which it refers were before this Court when it rendered its first decision in this case, in the form of the Government's motion and affidavit filed March 12, 1976, requesting a remand to the district court for reconsideration in light of the new deficiency determi-

nation and the forthcoming jeopardy assessment. Nevertheless, this Court handed down its decision four days later, upholding the district court's decision in all respects, including its order that plaintiff's money be returned "forthwith." The Government refers to this sequence of events in a footnote in its brief, suggesting that since this Court's decision "makes no reference to the Government's motion," it is "unclear whether the court ever considered the motion."

There is a remedy for a party who believes that this Court has rendered a decision which inadvertently overlooks critical facts which make its decision incorrect or unjust, if that is what the Government is suggesting happened here. Rule 40 of the Federal Rules of Appellate Procedure provides that "a petition for rehearing may be filed within 14 days after entry of judgment unless the time is shortened or enlarged by order. The petition shall state with particularity the points of law or fact which in the opinion of the petitioner the court has overlooked or misapprehended and shall contain such argument in support of the petition as the petitioner desires to present." The Government may not ignore this rule and its time limitations by then turning to the district court and asking it to amend a judgment that has been affirmed on appeal, based on facts which were known to the Government before affirmance. We note that in its motion for relief from judgment, the Government did not point out to the district court that the facts on which its motion was based had been presented to this Court before its final decision ordering the return of the money was rendered.

Even if we were to overlook the Government's procedural errors, and treat this case as an application to reopen a final judgment, we would deny the Government's petition. The Government has a heavy burden of proving manifest injustice to itself and minimal injury to the rights of the other party before we would grant such extraordinary relief. Mere "changed factual circumstances" are not sufficient, unless they are such as to render enforcement of our final order unjust. The only injury to itself identified by the Government is the possible loss of its lien priority once the money leaves its hands. We do not consider such a loss to be manifestly unjust, since the Government is simply returned to the position it would be in if it had not illegally seized the funds in the first place.

The Government goes on to argue that it has a right to apply the funds, even if they were seized pursuant to an illegal assessment to the new deficiency and assessment, under 26 U.S.C. § 6402(a), which provides:

> In the case of any overpayment, the Secretary . . . may credit the amount of such overpayment . . . against any liability in respect of an internal revenue tax on the part of the person who made the overpayment.

However broad the scope of this section, it cannot be applied to alter the provisions of a final judgment ordering the return of funds illegally held by the Internal Revenue Service. Under no reasonable construction of the term can such funds be held to constitute an "overpayment" within the meaning of the statute.

The decision of the district court is vacated, and the original order of July 31, 1975, mandating the return of taxpayer's funds forthwith, is reinstated.