WILLIE LEE HOLLIE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11027–76.     Filed March 26, 1980.

*Gerald Stahl,* for the petitioner.
*Richard M. Campbell* and *Barbara T. Kaplan,* for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for the year 1973 and additions to tax as follows:

| | Additions to tax | | |
|---|---|---|---|
| *Deficiency* | *Sec. 6651(a)[1]* | *Sec. 6653(a)* | *Sec. 6654* |
| $101,779 | $25,444.75 | $5,088.95 | $3,256.93 |

The parties have agreed that petitioner is liable for income tax

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year at issue. Amendments subsequent to the taxable year at issue and not relevant to the question before us have been disregarded.

for the taxable year 1973 in the amount of $50,154, with additions to tax under sections 6651(a), 6653(a), and 6654 of $12,538.50, $2,507.70, and $1,604.93, respectively. The only issue for decision is whether petitioner is entitled to a refund of funds collected from him as a result of a termination assessment to the extent that those funds exceed the agreed deficiency of $66,805.13, with appropriate adjustments in respect of interest.

## FINDINGS OF FACT

Some of the facts were stipulated and are found accordingly. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

At the time the petition herein was filed, petitioner Willie Lee Hollie was an inmate in Attica Prison, Attica, N.Y.

On November 16, 1973, respondent terminated petitioner's taxable year for the period January 1, 1973, to November 12, 1973, as authorized by section 6851, and sent a letter to petitioner giving notice of the termination and demanding payment of income taxes for the terminated period in the amount of $132,365. The letter stated that any amount collected as a result of the termination would be applied against the assessment for the terminated period and credited against the tax finally determined for the full taxable year and further informed petitioner that he was required to file a return for the terminated period and for his annual accounting period. Petitioner did not file a return for either the terminated period or the full taxable year 1973.

On June 11, 1974, respondent collected from the New York State Joint Task Force, a narcotics law enforcement unit, $84,930.26 which had been seized by the task force from petitioner at the time of his arrest in November 1973. Also on June 11, 1974, respondent applied this amount against the $132,365 assessment. Because of an error made by the Internal Revenue Service, notation of this payment did not appear on the transcript of account maintained in regard to petitioner's tax liability until some time after March 15, 1976, but that notation recorded the payment as having been applied on June 11, 1974.

Some time after July 1974 but before January 1975, in response to an audit letter, petitioner spoke on the telephone and met with Agent Jaffe of the Internal Revenue Service. Agent Jaffe did not treat statements made by petitioner as a claim for refund.

A 30-day letter, dated June 11, 1975, proposing a deficiency in

income tax based on income allegedly realized from narcotics transactions and additions to tax of $135,569.63, was sent by respondent to petitioner at 537 East 5th Street, New York, N.Y. The 30-day letter made no reference to the termination assessment or to the $84,930.26 which was applied against this assessment. In mid-1975, petitioner was referred to Gerald Stahl, a member of the New York bar with experience in handling tax matters. He requested that Stahl act on his behalf in the matter which he had pending before the Internal Revenue Service. Petitioner told Stahl that he was then incarcerated and that the Internal Revenue Service had taken from him an amount of money in excess of $70,000. Stahl agreed to act on petitioner's behalf if he received a $1,000 retainer, with the understanding that he would receive as the remainder of his fee one-third of whatever funds were refunded to petitioner by the Internal Revenue Service as a result of Stahl's efforts.

Through telephone conversations and correspondence with the Internal Revenue Service, Stahl ascertained that the 30-day letter had been sent to petitioner but returned to the Internal Revenue Service because petitioner was no longer at the address to which it was sent. He obtained a copy of the 30-day letter and an extension of time within which to file a protest to the letter.

A power of attorney was filed appointing Stahl petitioner's representative in all matters then pending before the Internal Revenue Service.

Stahl prepared a protest to the 30-day letter, dated August 28, 1975, requesting a district conference to appeal the findings of the examining officer. The protest made no reference to seized funds, or payments that should be applied against the proposed deficiency, or refunds, and no statement that there had been an overassessment. It took exception to every one of the additions and adjustments proposed in the 30-day letter as follows:

5) Exception is taken to the following additions and adjustments of the examining officer:

| | | | |
|---|---|---|---|
| A) | Additional Income: | | |
| | Sales of Narcotics (1/1/73 - 11/12/73) | $432,000.00 | |
| | Cost of Goods Sold | 216,000.00 | |
| | Additional Income | | $ 216,000.00 |
| B) | Standard Deduction | | $ 2,000.00 |

| | | |
|---|---|---:|
| C) | Personal Exemption | $ 750.00 |
| D) | Self Employment Tax | $ 864.00 |
| E) | Late Filing Penalty | $ 25,444.75 |
| F) | Negligence Penalty | $ 5,088.95 |
| G) | Underpayment of Estimated Tax Penalty | $ 3,256.93 |

6) Taxpayer submits the following in support of the above exceptions to the auditor's findings:

A) *Additional Income*

Reports of New York City Police and Federal authorities indicate two sales of narcotics by taxpayer for $2,800. Taxpayer's costs of producting [sic] this income are deductible against these sales in arriving at his additional income. See Sections 61 and 212 of I.R.C.

B) *Standard Deduction*

Taxpayer has itemized deductions and as such has the option of taking these deductions rather than electing the standard deduction. Sec. 144 I.R.C.

C) *Personal Exemption*

Taxpayer is entitled to an additional exemption for each dependent and others as designated by the Internal Revenue Code. Sec. 151 and 152 I.R.C.

D) *Self Employment Tax*

Taxpayer is not self employed in a trade or business and, therefore, he is not subject to the Self Employment Tax. Sec. 1401 and 1402 I.R.C.

E) *Late Filing Penalty*

Taxpayer is not liable for the late filing penalty since his failure to file timely was due to reasonable cause. Sec. 6651(a) I.R.C.

F) *Negligence Penalty*

Taxpayer is not guilty of negligence or intentional disregard of rules and regulations covering preparation and filing of his 1973 individual income tax returns; therefore, a penalty should not be assessed under Sec. 6653(a) I.R.C.

G) *Underpayment of Estimated Tax Penalty*

Taxpayer is not liable for the stated underpayment of estimated tax since he is subject to one of the statutory exceptions. See Sec. 6654(d) I.R.C.

A district conference was held on November 19, 1975, between Stahl and Paul Herman, a district conferee. On February 24, 1976, Stahl requested that the matter be transferred to the Appellate Division. On April 21, 1976, he met with Joseph Socha, the appellate conferee. No settlement agreement was reached. In addition to the conferences, Stahl also communicated with Herman and Socha by telephone several times prior to June 1976. During the course of their dealings with Stahl, prior to the issuance of the notice of deficiency, Herman and Socha did not

have information as to whether any of petitioner's assets, which they knew were subject to liens,[2] had been collected by respondent. Neither Herman nor Socha treated any document submitted by petitioner or any statement made by Stahl as a claim for refund.

A statutory notice of deficiency, dated September 30, 1976, determining a deficiency and additions to tax in the same amounts proposed in the 30-day letter, was mailed to petitioner and a petition was filed with this Court on December 20, 1976. The petition did not raise the issue of an overpayment or refund.

Petitioner never filed a claim for refund on the forms prescribed by respondent's regulations. An entry "Claim Pend - 470" on the transcript of petitioner's account kept by respondent was not a reference to a pending refund claim; it referred to a search request initiated within the Internal Revenue Service to determine how the $84,936.26 had been handled with respect to petitioner's account.

On September 19, 1975, the date on which the protest was received by the District Director of Internal Revenue in Manhattan, the District Director also received an undated letter from petitioner, prepared by Stahl, stating in relevant part:

> My tax return for the year 1973 has been examined, and an assessment proposed in excess of $100,000. Liens have been placed on all my available funds, including a savings bank book, #55122410, with the Central Savings Bank.
>
> I require $1,000 so that I can hire an attorney to protect my rights in this matter. Please release this amount from the liens which prevent me from paying these required legal fees.

Victor Godfrey, a revenue officer working on petitioner's case, referred this letter to Regional Counsel for an advisory opinion because he had no experience with a request for a release of funds to pay attorney's fees. Lawrence Ziegler, an attorney in the Regional Counsel's office, advised that, inasmuch as a balance was still outstanding on petitioner's account, there was no authority for returning $1,000 for legal fees. Neither Godfrey nor Ziegler treated petitioner's letter as a claim for refund.

An arrangement was made for petitioner to obtain the money for the retainer fee from the account with the Central Savings

---

[2] Socha and Herman testified that they knew of the existence of the liens at the time they first read the protest.

Bank to which he referred in his letter to the District Director. Respondent had served a notice of levy on Central Savings Bank for account No. 551224–10, maintained jointly in the names Willie Hollie and/or Julie Hollie, on November 16, 1973, which the bank had refused to honor without a withdrawal slip signed by both parties. Respondent agreed to divide the funds in the account with Julie Hollie because Ziegler concluded that a presumption existed, under New York State law, that one-half of the funds in the account belonged to her. On December 24, 1975, a withdrawal slip for $3,934.15 on account No. 551224–10, signed by both Willie Hollie and Julie Hollie, was presented to Central Savings Bank. Respondent collected $1,967.08 by check in satisfaction of his levy and released his levy with respect to the remaining balance in the joint account. Respondent applied the amount thus collected against petitioner's account. The remainder of the amount was withdrawn in the form of cash and a $1,000 check payable to Gerald Stahl. The $1,967.08 collected by respondent was paid within 2 years prior to the issuance of the notice of deficiency.

## OPINION

The issue for decision is whether respondent must refund[3] to petitioner a portion of the funds collected as a result of a termination assessment[4] for the period January 1, 1973, to

---

[3]Although respondent, on brief, frequently refers to "refund or credit," we do not perceive how any "credit" is involved in the instant situation. However, our analysis in respect of a "refund" would apply equally to a "credit" if there is a problem in that regard.

[4]Authority for the making of termination assessments is set forth is sec. 6851, which, during the taxable year in issue, provided in part:

SEC. 6851. TERMINATION OF TAXABLE YEAR.

(a) INCOME TAX IN JEOPARDY.—

(1) IN GENERAL.—If the Secretary or his delegate finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax for the current or the preceding taxable year unless such proceedings be brought without delay, the Secretary or his delegate shall declare the taxable period for such taxpayer immediately terminated, and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable. In any proceeding in court brought to enforce payment of taxes made due and payable by virtue of the provisions of this section, the finding of the Secretary or his delegate, made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes presumptive evidence of jeopardy.

November 12, 1973, which is in excess of the agreed Federal income tax liability for the full taxable year 1973, taking into account appropriate adjustments for interest. The dispute arises because respondent, while acknowledging his collection of funds from petitioner in excess of petitioner's basic tax liability (including additions to tax), takes the position that the statutory period for refund of overpayments has expired and refuses, therefore, with one exception, noted below, to return any funds to petitioner.[5]

At the outset, we note, not only that the termination assessment resulted in respondent's collection of funds in excess of petitioner's tax liability but, in addition, that the termination assessment itself was procedurally defective because respondent failed to send petitioner a notice of deficiency within 60 days after the termination assessment as required by section 6861(b), which was held applicable to section 6851 termination assessments in *Laing v. United States*, 423 U.S. 161 (1976).[6] This Court, however, is one of limited jurisdiction. We cannot order a refund. *Morse v. United States*, 494 F.2d 876, 879 (9th Cir. 1974); *Robbins Tire & Rubber Co. v. Commissioner*, 53 T.C. 275, 279 (1969).[7] We have jurisdiction only to determine whether an overpayment has been made. The extent of that jurisdiction is set forth in section 6512(b).[8] Subparagraph (2) of subsection (b)

---

[5]Respondent has conceded that $1,967.08 collected from the joint bank account held by Willie Hollie and Julie Hollie, see p. 1203 *supra*, was paid within 2 years of the mailing of the notice of deficiency and is refundable under sec. 6512(b)(2)(B), see pp. 1206–1207 *infra*.

[6]For termination assessments where notice and demand is made after Feb. 28, 1977, the effect of *Laing v. United States*, 423 U.S. 161 (1976), has been abrogated by sec. 6851(b), as amended by the Tax Reform Act of 1976, Pub. L. 94–455, sec. 1204(b)(1), 90 Stat. 1520, 1696, which explicitly provides for the mailing of a notice of deficiency within 60 days after the later of the due date of the return for the taxpayer's full taxable year or the date of filing such return.

[7]Accord, *Rosenberg v. Commissioner*, T.C. Memo. 1970–201, affd. 450 F.2d 529 (10th Cir. 1971).

[8]Sec. 6512(b) provides in relevant part:

(b) OVERPAYMENT DETERMINED BY TAX COURT.—

(1) JURISDICTION TO DETERMINE.—Except as provided by paragraph (2) * * * , if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year * * * in respect of which the Secretary or his delegate determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.

(2) LIMIT ON AMOUNT OF CREDIT OR REFUND.—No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid—

(A) after the mailing of the notice of deficiency,

(B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the

provides that no portion of such amount may be refunded unless the Court determines that such portion was paid within one of certain time periods prescribed therein.[9]

Before turning to the applicability of section 6512(b), we address ourselves to the question of the impact of *Laing v. United States, supra,* on the petitioner's claim for a refund because respondent did not send petitioner a deficiency notice within the 60-day period after the termination assessment as mandated by that decision. It has been held that an overpayment subject to the generally applicable statutory periods of limitation results even where income taxes have been "erroneously or illegally assessed or collected." *Jones v. Liberty Glass Co.,* 332 U.S. 524 (1947). This principle has been applied where a statute under which the taxes were collected was declared unconstitutional subsequent to payment (*Wis. Nat. Life Ins. Co. v. United States,* 70 Ct. Cl. 433, 42 F.2d 316 (1930)); where a regulation was held invalid (see *Kavanagh v. Noble,* 332 U.S. 535, 538–539 (1947)); where a statute was made retroactive but did not expressly reopen barred years (*United States v. Zacks,* 375 U.S. 59 (1963)); and where the exemption of a charity was granted retroactively (*Knights of Pythias H. Co. of Wilmington v. United States,* 345 F. Supp. 680 (D. Del. 1972)). See also *West Publishing Co. v. United States,* 198 Ct. Cl. 668 (1972) (30 AFTR 2d 72–5007, 72–2 USTC par. 9488). In *Gross v. United States,* 130 F. Supp. 441 (D. Mass. 1955), the District Court assumed that the requisite notice of deficiency had not been given but nevertheless denied the taxpayer's claim for refund of the tax that had been collected.[10] Compare *Townsend v. Commissioner,* 12 B.T.A. 1343 (1928). Based upon the foregoing and keeping in mind the

---

date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, or

(C) within the period which would be applicable under section 6511(b)(2), (c), or (d), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency—

(i) which had not been disallowed before that date,

(ii) which had been disallowed before that date and in respect of which a timely suit for refund could have been commenced as of that date, or

(iii) in respect of which a suit for refund had been commenced before that date and within the period specified in section 6532.

[9]There is some question as to whether the conditions of sec. 6512(b)(2) operate as a statute of limitations or are jurisdictional prerequisites to the determination of an overpayment. See and compare *Koufman v. Commissioner,* T.C. Memo. 1977–225, and *Caligiuri v. Commissioner,* T.C. Memo. 1975–319, affd. 549 F.2d 1155 (8th Cir. 1977).

[10]The opinion of the District Court does not reveal how the tax was collected.

brooding omnipresence of considerations of sovereign immunity (see, e.g., *Kreiger v. United States*, 539 F.2d 317, 320–321 (3d Cir. 1976)), we conclude that respondent's error in failing to send a notice of deficiency in accordance with *Laing v. United States, supra,* was simply a procedural defect which did not affect the period of limitations applicable to our determination of petitioner's right to a refund and that we must make that determination in accordance with the provisions of section 6512(b).[11]

We turn now to an examination of the time limitations on the allowance of a refund, set forth in section 6512(b)(2), as they apply to the facts before us. It is clear that neither the conditions contained in subsection (A) nor in subsection (B) of 6512(b)(2) furnish any sustenance to petitioner. Subsection 6512(b)(2)(A) allows a refund of a portion of an overpayment paid after the mailing of the notice of deficiency and is inapplicable since the payment at issue herein was not made after the mailing of the notice.

Subsection 6512(b)(2)(B) allows a refund of an overpayment if a claim for refund filed on the date the notice of deficiency was mailed would have been timely, i.e., a deemed claim for refund. Whether such claim would have been timely with respect to any amount paid is to be determined under subsections 6511(b)(2), (c), and (d).[12]

---

[11]In a number of cases decided in the wake of *Laing*, the Government has sought, and been allowed, to credit the collected funds towards other valid assessments. *Estate of McDonald v. United States,* __ F. Supp. __ (N.D. Cal. 1979, 43 AFTR 2d 79–415, 1979–1 USTC par. 9182); *Causey v. United States,* an unreported case (D. Minn. 1978, 43 AFTR 2d 79–636, 79–1 USTC par. 9161); *Boyd v. United States,* 439 F. Supp. 907 (E.D. Pa. 1977); *Sellers v. Commissioner,* an unreported case (N.D. Ga. 1977, 39 AFTR 2d 77–1421, 77–1 USTC par. 9377); *United States v. Cooper,* 435 F. Supp. 3 (D. D.C. 1976); *Harris v. United States,* 412 F. Supp. 24 (E.D. Mich. 1976). The implication of these cases is that amounts seized pursuant to a procedurally defective termination assessment are overpayments to be treated in accordance with the procedures generally applicable thereto. See *Boyd v. United States,* 439 F. Supp. at 909; *Harris v. United States,* 412 F. Supp. at 25. Where there was no other assessment outstanding against which the collected funds could be applied, return of the funds has been ordered, even in the absence of the prior filing of a claim for refund. See *Campbell v. United States,* 592 F.2d 309 (6th Cir. 1979), and 532 F.2d 1057 (6th Cir. 1976); *Baylor v. United States,* an unreported case (E.D. N.Y. 1976, 38 AFTR 2d 76–5852, 1976–2 USTC par. 9654). None of these cases addressed the issue of the period of limitations and therefore they offer no guidance in the instant situation.

[12]Sec. 6511 provides in part:

SEC. 6511. LIMITATIONS ON CREDIT OR REFUND.

(a) PERIOD OF LIMITATION ON FILING CLAIM.—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. * * *

Subsections 6511(c) and (d) contain special rules not relevant herein and require no further consideration. Subsection 6511(b)(2) contains three limitation periods, none of which would be met by a claim deemed filed on the date the notice of deficiency was mailed to petitioner. Subsections 6511(b)(2)(A) and (C) are inapplicable, the former because it contains a limitations period for situations where a return was filed and petitioner filed no return, and the latter because it applies where no claim was filed and under subsection 6512(b)(2)(B) a claim is deemed to have been filed. Subsection 6511(b)(2)(B) allows the refund of the portion of the tax paid during the 2 years immediately preceding the filing of the claim. Since the claim is deemed to have been filed on September 30, 1976, the date the deficiency notice was mailed, and payment of the amount at issue was made when respondent collected petitioner's funds from the New York Joint Task Force on June 11, 1974, no amount can be refunded under this subsection, taken in conjunction with subsection 6512(b)(2)(B).

Subsection 6512(b)(2)(C) applies where a timely claim for refund has been filed before the mailing of the notice of deficiency, which has not been disallowed or which was, or could have been, the basis of a timely refund suit as of that date. Whether the claim was timely with respect to any particular payments is again to be determined under the periods set forth in subsections 6611(b)(2), (c), and (d). For the reasons given above in our discussion of subsection 6512(b)(2)(B), subsections 6511(b)(2)(A), (b)(2)(C), (c), and (d) have no applicability here. The only subsection of possible applicability is subsection

---

(b) LIMITATION ON ALLOWANCE OF CREDITS AND REFUNDS.—

(1) FILING OF CLAIM WITHIN PRESCRIBED PERIOD.—No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

(2) LIMIT ON AMOUNT OF CREDIT OR REFUND.—

(A) LIMIT WHERE CLAIM FILED WITHIN 3-YEAR PERIOD.—If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. * * *

(B) LIMIT WHERE CLAIM NOT FILED WITHIN 3-YEAR PERIOD.—If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

(C) LIMIT IF NO CLAIM FILED.—If no claim was filed, the credit or refund shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund is allowed.

6511(b)(2)(B), which allows a credit or refund if a claim was filed within 2 years of payment.

Both respondent and petitioner agree that no formal claim for refund was filed by petitioner at any time. Petitioner argues, however, that an informal claim for refund was filed within 2 years of payment, thus meeting the conditions of subsection 6512(b)(2)(C) and subsection 6511(b)(2)(B) and entitling petitioner to a refund. In the alternative, petitioner argues that section 6861(f) makes the requirement of filing a timely claim inapplicable where payment has been made pursuant to a termination assessment. We consider first petitioner's alternative argument.

Section 6861(f) provides:

> (f) COLLECTION OF UNPAID AMOUNTS.—When the petition has been filed with the Tax Court and when the amount which should have been assessed has been determined by a decision of the Tax Court which has become final, then any unpaid portion, the collection of which has been stayed by bond as provided in section 6863(b) shall be collected as part of the tax upon notice and demand from the Secretary or his delegate, and any remaining portion of the assessment shall be abated. *If the amount already collected exceeds the amount determined as the amount which should have been assessed, such excess shall be credited or refunded to the taxpayer as provided in section 6402, without the filing of claim therefor.* If the amount determined as the amount which should have been assessed is greater than the amount actually assessed, then the difference shall be assessed and shall be collected as part of the tax upon notice and demand from the Secretary or his delegate. [Emphasis added.]

Petitioner argues that the phrase "without the filing of claim therefor" makes the limitations period on refunds inapplicable to amounts collected pursuant to termination assessments.

Respondent does not contest petitioner's assertion that, under the Supreme Court's holding in *Laing v. United States, supra,* to the effect that a section 6851 termination is a deficiency whose assessment and collection is subject to the procedures set forth in section 6861, section 6861(f) is applicable herein.[13] Respondent argues only that 6861(f) does not excuse compliance with the periods of limitation provided in section 6512(b)(2). On the basis of the statutory language and its legislative history, we agree with respondent.

Since section 6861(f) states that any excess amount collected "shall be credited or refunded to the taxpayer *as provided in*

---

[13]For termination assessments, where notice and demand takes place after Feb. 28, 1977, sec. 6861(f) is expressly made applicable by sec. 6851(e), amended by the Tax Reform Act of 1976, Pub. L. 94–455, sec. 1204(b)(2), 90 Stat. 1520, 1697.

*section 6402*" (emphasis added), it is necessary to examine the latter provision. Section 6402 provides in relevant part:

(a) GENERAL RULE.—In the case of any overpayment, the Secretary or his delegate, *within the applicable period of limitations*, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person. [Emphasis added.]

Although petitioner would have us read the reference to section 6402 to refer only to that part of section 6402 which provides a procedure for first crediting an overpayment against liabilities and then refunding the balance, we see no indication that the phrase "as provided in section 6402" does not refer to that provision in its entirety, including the reference therein to "the applicable period of limitations."

This reading is supported by the legislative history. The first forerunner of present section 6861(f) appeared in section 279(i) of the Revenue Act of 1926,[14] ch. 27, 44 Stat. (Part 2) 9, 60, which provided that any excess amount collected should be credited or refunded "as provided in section 284." Section 279(i) became section 273(i) in the Revenue Act of 1928, ch. 852, 45 Stat. 791, 855, where the phrase "without the filing of claim therefor" was first added.[15] The reference to section 284 became a reference to section 322 to correspond to a change in section number. Section 273(i) was carried into the Internal Revenue Code of 1939, 53 Stat. (Part 1) 85, without change. The provisions referred to in the predecessors of section 6861(f), i.e., section 284 of the 1926

---

[14]Sec. 279(i), Revenue Act of 1926, ch. 27, 44 Stat. (Part 2) 9, 60, provided in part:

"When the petition has been filed with the Board and when the amount which should have been assessed has been determined by a decision of the Board which has become final, then any unpaid portion, the collection of which has been stayed by the bond, shall be collected as part of the tax upon notice and demand from the collector, and any remaining portion of the assessment shall be abated. *If the amount already collected exceeds the amount determined as the amount which should have been assessed, such excess shall be credited or refunded to the taxpayer as provided in section 284.* * * * [Emphasis added.]"

[15]Sec. 273 (i), Revenue Act of 1928, ch. 852, 45 Stat. 791, 855 (and sec. 273(i), I.R.C. 1939, 53 Stat. (Part 1) 85), provided in part:

"COLLECTION OF UNPAID AMOUNTS.—When the petition has been filed with the Board and when the amount which should have been assessed has been determined by a decision of the Board which has become final, then any unpaid portion, the collection of which has been stayed by the bond, shall be collected as part of the tax upon notice and demand from the collector, and any remaining portion of the assessment shall be abated. *If the amount already collected exceeds the amount determined as the amount which should have been assessed, such excess shall be credited or refunded to the taxpayer as provided in section 322, without the filing of claim therefor.* * * * [Emphasis added.]"

Revenue Act and section 322 of the later Acts and the 1939 Code, included, not only provisions comparable to those found in section 6402, but also predecessors of sections 6511(b) and 6512(b).[16] Thus, these provisions were direct references, not only to a procedure for crediting and refunding overpayments, but also to the limitations periods.[17] Moreover, current regulations,

---

[16]E.g., sec. 322, I.R.C. 1939, 53 Stat. (Part 1) 91–92, provided in part:

SEC. 322. REFUNDS AND CREDITS.

(a) AUTHORIZATION.—Where there has been an overpayment of any tax imposed by this chapter, the amount of such overpayment shall be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance shall be refunded immediately to the taxpayer.

(b) LIMITATION ON ALLOWANCE.—

(1) PERIOD OF LIMITATION.—Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. If no return is filed by the taxpayer, then no credit or refund shall be allowed or made after two years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer.

(2) LIMIT ON AMOUNT OF CREDIT OR REFUND.—The amount of the credit or refund shall not exceed the portion of the tax paid during the three years immediately preceding the filing of the claim, or, if no claim was filed, then during the three years immediately preceding the allowance of the credit or refund.

(c) EFFECT OF PETITION TO BOARD.—If the Commissioner has mailed to the taxpayer a notice of deficiency under section 272(a) and if the taxpayer files a petition with the Board of Tax Appeals within the time prescribed in such subsection, no credit or refund in respect of the tax for the taxable year in respect of which the Commissioner has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of such tax shall be instituted in any court except—

(1) As to overpayments determined by a decision of the Board which has become final; and

(2) As to any amount collected in excess of an amount computed in accordance with the decision of the Board which has become final; and

(3) As to any amount collected after the period of limitation upon the beginning of distraint or a proceeding in court for collection has expired; but in any such claim for credit or refund or in any such suit for refund the decision of the Board which has become final, as to whether such period has expired before the notice of deficiency was mailed, shall be conclusive.

(d) OVERPAYMENT FOUND BY BOARD.—If the Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer. No such credit or refund shall be made of any portion of the tax unless the Board determines as part of its decision that such portion was paid (1) within three years before the filing of the claim or the filing of the petition, whichever is earlier, or (2) after the mailing of the notice of deficiency.

The predecessors of sec. 322, I.R.C. 1939, discussed *supra*, contained similar provisions.

[17]Furthermore, where Congress wanted to eliminate both the requirement of filing a claim and the application of the limitations period, it had previously so provided in explicit terms with respect to decreases in invested capital in sec. 284 (c), Revenue Act of 1926, n. 14 *supra*, which stated:

(c) If the invested capital of a taxpayer is decreased by the Commissioner, and such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years, with the result that there has been an overpayment of income, war-profits, or excess-profits taxes in any previous year or years, then the amount of such overpayment shall be credited or refunded, *without the filing of a*

having roots in the regulations under the 1926 and 1928 Revenue Acts, explicity provide that the limitations periods are applicable where credit or refund of an excess amount is made under section 6861(f). Sec. 301.6512–1(c), Proced. & Admin. Regs.; sec. 19.322–7(b)(2), Regs. 103 (1940); Art. 1257 (*b*), Regs. 74 (1929); Art. 1305(C)(2), Regs. 69 (1926).[18] Section 6861(f) was intended to be a reenactment of the preexisting law. H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. A421 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess 597 (1954). Regulations, neither unreasonable nor plainly inconsistent with the statutes, are entitled to great weight where they have been in effect for a long continuous period during which the statute has been reenacted and amended, without disapproval of the regulations. *Bingler v. Johnson*, 394 U.S. 741, 749–751 (1969); *United States v. Correll*, 389 U.S. 299, 307 (1967). Cf. *Fulman v. United States*, 434 U.S. 528 (1978).

Section 6861(f) and its predecessors are operative only where a petition has been filed with this Court, or its predecessor, the Board of Tax Appeals. The phrase "without the filing of claim therefor" was added not long after the establishment of the Board of Tax Appeals in 1924. In this context, we view the

---

*claim therefor, notwithstanding the period of limitation provided for in subdivision (b) or (g) has expired.* [Emphasis added.]

[18]Sec. 301.6512–1(c), Proced. & Admin. Regs., provides:

(c) *Jeopardy assessments.* In the case of a jeopardy assessment made under section 6861(a), if the amount which should have been assessed as determined by a decision of the Tax Court which has become final is less than the amount already collected, the excess payment shall be credited or refunded *subject to a determination being made by the Tax Court with respect to the time of payment as stated in paragraph (b) of this section.* [Emphasis added.]

Par. (b) provides in part:

No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid—

(1) After the mailing of the notice of deficiency, or

(2) Within the period which would be applicable under section 6511(b)(2), (c), or (d) (see §§301.6511(b)–1, 301.6511(c)–1, 301.6511(d)–1, 301.6511(d)–2, and 301.6511(d)–3), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment.

Art. 1305(C)(2), Regs. 69 (1926), contained a provision that "the excess payment shall be credited or refunded *within the period of limitations provided in section 284(b) or (g)."* (Emphasis added.)

Sec. 284(b) contained the generally applicable limitations periods for credits and refunds while subsec. (g) provided a special time limit where waivers had been filed for the years 1917–21.

Art. 1257(*b*)(2), Regs. 74 (1929), provided that "the excess payment shall be credited or refunded subject to the limitation provided in (*b*)(1) of this article." Par. (*b*)(1) limited credits or refunds to payments within 2 years of the filing of a refund claim or the petition. Sec. 19.322–7(*b*)(2), Regs. 103 (1940), was similiar to current sec. 301.6512–1(c), Proced. & Admin. Regs., quoted above, although the applicable periods of limitation referred to therein were not the same as the current limitations periods.

phrase in question as complementary to the provisions which allow this Court to determine an overpayment after the issuance of a notice of deficiency and the filing of a petition if payment was made within certain prescribed periods preceding the mailing of the notice, or, under prior law, the filing of the petition. Sec. 6512(b)(2)(B); sec. 322(d), I.R.C. 1939, n. 16 *supra*. In sum, we find no indication that the phrase in question was intended to excuse compliance with the periods of limitation either by filing of a timely claim or by virtue of a deemed filing at the time of the issuance of a notice of deficiency.[19]

We turn, therefore, to the question of whether petitioner has complied with the period of limitations set forth in section 6511(b)(2)(B), as incorporated in section 6512(b)(2)(C), by the filing of a claim for refund, within 2 years of the date of payment, June 11, 1974.

Respondent's regulations set forth certain requirements concerning the form in which a claim for refund of income taxes should be filed.[20] It has long been recognized, however, that a claim for refund need not be in any specific form, and informal refund claims, timely filed, which adequately notify the Internal Revenue Service that a refund is being sought, have been held to toll the statute of limitations and, if defective, may be perfected by the filing of a formal claim after the lapse of the statutory period. *United States v. Kales*, 314 U.S. 186, 194 (1941); *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct. Cl. 106, 113–114, 318 F.2d 915, 920 (1963). See also *Barenfeld v. United States*, 194 Ct. Cl. 903, 908, 442 F.2d 371, 374 (1971).

An informal claim must have a written component; an oral statement alone is insufficient to satisfy the statutory requirement that a claim be filed. *Ritter v. United States*, 28 F.2d 265, 267 (3d Cir. 1928); *Barenfeld v. United States*, 194 Ct. Cl. at 912, 442 F.2d at 375; *Wrightsman Petroleum Co. v. United States*, 92

---

[19]Petitioner argues that applying the statutory periods of limitations renders the phrase "without the filing of claim therefor" meaningless, because respondent controls the time of the mailing of the notice of deficiency and can delay mailing it until the periods set forth in sec. 6512(b)(2)(B) have expired so that a taxpayer can only protect himself by filing a claim. However, sec. 6861(b), as interpreted by the Supreme Court in *Laing*, requires the sending of a notice of deficiency within a prescribed time period after a termination assessment, as does sec. 6851(b), as amended by the Tax Reform Act of 1976, where notice and demand is made after Feb. 28, 1977. Moreover, as we have previously concluded (see pp. 1205–1206, petitioner's argument is without validity even though respondent failed to comply with the time limit of sec. 6861(b) as required by *Laing*.

[20]See secs. 301.6402–2 and 301.6402–3, Proced. & Admin. Regs.

Ct. Cl. 217, 238, 35 F. Supp. 86, 96 (1940). The written component is not to be considered in isolation and is to be viewed in the context of the surrounding circumstances (*American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct. Cl. at 114, 318 F.2d at 920; *Higginson v. United States*, 113 Ct. Cl. 131, 157–158, 81 F. Supp. 254, 267–268 (1948), modified on another issue 121 Ct. Cl. 421, 101 F. Supp. 763 (1952)), but the writing must give the Commissioner fair notice that a refund of taxes is sought for specified years and of the basis for the claim. *Missouri Pac. R. Co. v. United States*, 214 Ct. Cl. 623, 558 F.2d 596 (1977); *Barenfeld v. United States*, 194 Ct. Cl. at 908, 442 F.2d at 374–375; *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct. Cl. at 114, 318 F.2d at 920. In any particular case, the combination of facts and circumstances must ultimately determine whether sufficient notice has been given to the Commissioner to constitute an informal claim for refund. *United States v. Kales, supra* at 194; *Newton v. United States*, 143 Ct. Cl. 293, 300, 163 F. Supp. 614, 619 (1958).

The elements which allegedly combine to form petitoner's informal claim are his letter seeking a release of $1,000 for payment of attorney's fees, his written protest submitted in response to the 30-day letter, and the oral statements claimed to have been made by petitioner and his attorney.[21] The letter and protest were received by respondent on September 19, 1975, within 2 years of the collection of petitioner's funds on June 11, 1974, and the conversations with respondent's representatives, in which a refund allegedly was requested, also took place within the 2-year statutory period.

We find the letter seeking a release of funds for attorney's fees to be nothing more than a request that a limited amount of funds be released from liens for a specific purpose. It mentions only that petitioner's assets were subject to liens and does not state that any assets subject to the liens had been collected by respondent. We do not believe that this letter gives any sustenance to petitioner's claim that a refund was requested in writing.

---

[21]We are somewhat hampered in analyzing petitioner's position as to the making of an informal claim because, although petitioner took such a position at trial and the trial was held on this particular issue, petitioner chose not to articulate this argument on brief or to request findings of facts with respect thereto. Petitioner indicated, however, in his reply brief, that he was not abandoning the position that an informal claim had been made and respondent addressed the question fully on brief. We have, therefore, considered the issue of whether an informal claim for refund was made.

We must, therefore, examine the protest to the 30-day letter to see if it can be construed as the written component of an informal claim. Written protests have sometimes been held to constitute informal claims where they have indicated that an overpayment had been made or that the occurrence of a certain contingency would require the filing of a claim for refund or result in an overpayment. Compare *United States v. Kales, supra,* and *Newton v. United States, supra,*[22] with *Mohawk Rubber Co. v. United States,* 88 Ct. Cl. 50, 25 F. Supp. 228 (1938), *Estate of Hansen v. Commissioner,* 9 T.C. 108 (1947), and *Forhan v. Commissioner,* 45 B.T.A. 799 (1941). The most obvious defect in petitioner's protest, as far as the requisites of a claim for refund are concerned, is that it contains no reference to the collection of petitioner's funds by respondent and contains no explicit request for a refund; nor did the 30-day letter, to which the protest was a response, mention any collection of petitioner's funds. Thus, on its face, the protest fails to satisfy the most basic requirement of a claim—advising the Commissioner that a refund is being sought. See *Barenfeld v. United States,* 194 Ct. Cl. at 908, 442 F.2d at 373–375; *American Radiator & Standard Sanitary Corp. v. United States,* 162 Ct. Cl. at 113–114, 318 F.2d at 920.

The next inquiry, therefore, must be whether other circumstances known to respondent were such that, in conjunction therewith, the protest was sufficient as a claim. Respondent argues that within the Internal Revenue Service, the collection of funds subject to liens is a process totally separate from the audit and the handling of the 30-day letter and protest and that, therefore, we cannot impute to those of his representatives who dealt with the protest any knowledge in regard to the collection of funds which would lead them to conclude that the protest was a claim for refund. Mere availability to the Commissioner of information from which he could infer that a refund is being claimed is not equivalent to notice that a claim is being asserted. *Union Pacific R.R. v. United States,* 182 Ct. Cl. 103, 113, 389 F.2d

---

[22]In that case, the informal claim included, in addition to the protests, a memorandum indicating that the taxpayer was paying the tax to stop the potential accumulation of interest, subject to his right to recover in the event of a favorable outcome of certain pending litigation, as set forth in the protests.

437, 444–445 (1968); *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct. Cl. at 114, 318 F.2d at 920.[23] The Commissioner is not required to weigh circumstantial evidence or make an independent investigation to determine whether a taxpayer is asking for a refund. *Barenfeld v. United States*, 194 Ct. Cl. at 912, 442 F.2d at 375; *Union Pacific R.R. v. United States*, 182 Ct. Cl. at 113, 389 F.2d at 444–445; *Rosengarten v. United States*, 149 Ct. Cl. 287, 294, 181 F. Supp. 275, 279 (1960). In short, mere knowledge of an overpayment on the part of representatives is not enough.

The adjustments to income proposed in the 30-day letter, if accepted, would have resulted, not only in the retention by respondent of the funds already collected from petitioner, but also in the collection of additional funds. Only $84,930.26 had been collected from petitioner, while petitioner's tax liability under the proposed adjustments was $135,569.63. Furthermore, while the protest states in paragraph 5A that exception is taken to the proposed additional income of $216,000, paragraph 6A impliedly admits that some unreported income was realized by petitioner. Thus, it could possibly be argued that, where the amount of the proposed adjustment and the amount of funds collected are identical, an agent of respondent having knowledge of the collection could reasonably place only one interpretation on a protest, i.e., that it was a claim for refund. However, in the absence of any more explicit statement, the protest herein could reasonably be interpreted, even with knowledge that collection had occurred, as an objection to any additional assessment and not a claim for refund. See *Estate of Hansen v. Commissioner*, 9 T.C. at 114–115; *Forhan v. Commissioner*, 45 B.T.A. at 802.

Finally, petitioner's attorney was experienced in handling tax matters and knew, or should have known, the difference between a claim for refund and a protest. In this context, we cannot find that the document was erroneously captioned "protest" and was intended as a claim. See *Estate of Hansen v. Commissioner, supra* at 115; *Forhan v. Commissioner, supra* at 802. We further note that this is not a case where compliance with the requirements of the regulations has been waived by

---

[23]See also *Benenson v. United States*, 257 F. Supp. 101, 108 (S.D. N.Y. 1966); *Wrightsman Petroleum Co. v. United* States, 92 Ct. Cl. 217, 238, 35 F. Supp. 86, 96 (1940); and *Alisa v. Commissioner*, T.C. Memo. 1976–255, where the fact that the internal revenue agent wrote an internal memorandum summarizing the taxpayer's oral claim for refund was held insufficient.

respondent by a consistent pattern of dealing with petitioner as if such a claim had been filed. Cf. *United States v. Kales*, 314 U.S. 186 (1941). See also *United States v. Felt & Tarrant Co.*, 283 U.S. 269 (1931). The testimony of respondent's representatives—district and appellate conferees, revenue officer, revenue agent, and attorney—indicated that at no time were any of the submissions by petitioner dealt with as a claim for refund.

In any event, even if we had found that the protest, considered in light of the surrounding circumstances, was an informal claim, we would conclude that it was at best defective. In this context, petitioner's action would have been insufficient to entitle him to a refund. We have found no case, nor has any case been cited to us, in which the filing of an informal claim, defective in some respect, was held to do more than toll the statute of limitations until the perfection of that claim by the filing of a formal claim. See, e.g., *United States v. Kales, supra* at 194; *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct. Cl. at 117, 318 F.2d at 921. Petitioner has not at any time filed a formal claim. Moreover, the time for so perfecting a defective informal claim had passed, since the notice of deficiency constituted a complete rejection of that purported claim and a claim once rejected cannot be amended. *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 72 (1933); *Tobin v. Tomlinson*, 310 F.2d 648 (5th Cir. 1962); *Solomon v. United States*, 57 F.2d 150 (2d Cir. 1932); *Estate of Hansen v. Commissioner, supra* at 115; *Forhan v. Commissioner, supra* at 803.

In reaching this conclusion, we recognize that, whenever the Government retains tax payments which admittedly exceed the amount actually owed because the period of limitations for filing a refund claim has expired, the result appears harsh. This is particularly so here, where the overpayment was involuntary, resulting from respondent's collection of petitioner's funds levied upon after a termination assessment. Moreover, we are aware, as we have discussed above, that the procedural errors which created the present dispute were not made solely by petitioner.[24] Nevertheless, the statutory periods of limitation

---

[24]We note in passing that, had the respondent sent petitioner a notice of deficiency within 60 days of the termination assessment, as the Supreme Court subsequently determined was required in *Laing v. United States, supra*, respondent's collection of petitioner's funds would have occurred after the mailing of the notice of deficiency and the funds would be refundable under sec. 6512(b)(2)(A).

embody a congressional policy in favor of cutting off the right to a refund after the passage of a certain period of time and we cannot ignore that congressional mandate. While the denial to the petitioner of a refund to which he would be entitled but for the expiration of the statutory periods is unfortunate, it is a result inherent in the application of any period of limitations. *Kavanagh v. Noble*, 332 U.S. 535, 539 (1947); *Rahr Malting Co. v. United States*, 260 F.2d 309, 312 (7th Cir. 1958); *Estate of Hansen v. Commissioner*, 9 T.C. at 115.

*Decision will be entered under Rule 155.*

---

However, under sec. 6851(b), as amended by the Tax Reform Act of 1976 (see n. 6 *supra*), a taxpayer who, like petitioner, failed to file a return for the full taxable year after a termination assessment could find himself in the same position as petitioner, with the notice of deficiency mailed too late to serve as a timely claim, since that section requires mailing of notice within 60 days of the later of the due date, or the date of filing, of the return.